[L.A. No. 28426.   In Bank.   June 16, 1965.]

COUNTY OF LOS ANGELES, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; SHIRLEY M. HAWLEY, an Incompetent Person, etc., Real Party in Interest.

Harold W. Kennedy, County Counsel, and Lloyd S. Davis, Chief Trial Deputy County Counsel, for Petitioner.

Thomas C. Lynch, Attorney General, Willard A. Shank, Assistant Attorney General, Robert H. O'Brien, Deputy Attorney General, Harry S. Fenton, Robert F. Carlson and Kenneth G. Nellis as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Wise, Kilpatrick & Clayton and George E. Wise for Real Party in Interest.

TRAYNOR, C. J.—Petitioner, the County of Los Angeles, seeks a writ of prohibition to restrain the trial court from proceeding further with an action brought by the real party in interest, Shirley M. Hawley.[1] Mrs. Hawley filed her complaint on September 1, 1961, alleging that she suffered personal injuries caused by the negligence of employees of the Los Angeles County Hospital. Only her action against the

---

[1] Mrs. Hawley, an incompetent, appears by her husband as guardian ad litem.

county is involved in this proceeding. The action was not brought to trial until November 25, 1964, because of the 1961 moratorium established by Civil Code section 22.3 on causes of action against public agencies. The county contends that the action must be dismissed because it is barred by the 1963 statutes governing the tort liability of public agencies. (Gov. Code, §§ 810-895.8.)

The facts are stipulated. On September 4, 1960, Mrs. Hawley was admitted to the Los Angeles County Hospital for barbiturate intoxication and alcoholism. On September 5, one of the attending physicians ordered that she be placed in "soft restraints," that is, a tying of the hands to prevent injury to the patient. On September 6, a staff psychiatrist examined her, found that she had a "probably infantile personality," and recommended her transfer to the psychiatric unit for observation. A health officer then applied for her emergency admission to the psychiatric unit on the ground that she was mentally ill and therefore likely to injure herself or others if not immediately hospitalized. (Welf. & Inst. Code, § 5050.3.) At about 4 p.m. on September 6, she was moved from the medical unit to the psychiatric unit. At about 5 p.m., while in the admitting room of the psychiatric unit, she fell from her bed and allegedly suffered a severe brain injury. A registered nurse was present and in charge of the admitting room. Mrs. Hawley was not being restrained with soft restraints or otherwise, and no bedrails were being used.

At the time of the injury, in September 1960, Mrs. Hawley could not have recovered against the county because of the common-law doctrine of sovereign immunity. (*Talley* v. *Northern San Diego Hosp. Dist.,* 41 Cal.2d 33 [257 P.2d 22].) ■ The county contends that she would also have been barred by section 6005 of the Welfare and Institutions Code. This contention is without merit. Section 6005 provided: "Any superintendent or person in charge of the county psychopathic hospital, and any public officer, public employee, or public physician who either admits, causes to be admitted, delivers or assists in delivering, detains, cares for, or treats, or assists in detaining, caring for or treating, any person pursuant to this chapter shall not be rendered liable thereby either civilly or criminally."[2] Section 6005 relieves public employees of liability only for activity done

─────────────

[2] In 1963, the section was amended to provide only for criminal immunity. Civil immunity is now governed by Government Code sections 854-856.4.

"pursuant to this chapter," and the chapter provides only for procedures of admission and detention of mentally ill persons. (Welf. & Inst. Code, §§ 6000-6004.) Nothing in the chapter is concerned with the course of treatment once treatment has begun, and the section therefore does not provide immunity for negligent conduct in the course of treatment.

■ It merely codifies in part the usual rule of liability of public employees: they are liable for torts committed while acting in a ministerial capacity but not while acting in a discretionary capacity. (*Lipman* v. *Brisbane Elementary School Dist.*, 55 Cal.2d 224, 229 [11 Cal.Rptr. 97, 359 P.2d 465].)

■ In *Muskopf* v. *Corning Hospital Dist.*, 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], this court held that the rule of governmental immunity that would have barred Mrs. Hawley at the time of the injury could no longer be invoked to shield a public body from liability for the torts of its agents who acted in a ministerial capacity. Mrs. Hawley thus had a cause of action against the county under *Muskopf*, but the effect of that decision was suspended by the enactment of the moratorium legislation of 1961. (Civ. Code, § 22.3; *Corning Hospital Dist.* v. *Superior Court*, 57 Cal.2d 488, 493-495 [20 Cal.Rptr. 621, 370 P.2d 325].) [4] In 1963 the Legislature added division 3.6 to the Government Code (§§ 810-996.6) to deal comprehensively with the problem of governmental immunity. This legislation does not eliminate the county's responsibility for the negligence of its employees in this case but provides that it is not directly liable to Mrs. Hawley.

Government Code section 854.8 provides: "(a) [E]xcept as provided in [subdivision] ... (d) of this section, a public entity is not liable for:... (2) An injury to any person committed or admitted to a mental institution. .... (d) Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission.... [T]he public entity shall pay, as provided in Article 4 (commencing with Section 825) of Chapter 1 of this part, any judgment based on a claim against a public employee licensed in one of the healing arts under Division 2 (commencing with Section 500) of the Business and Professions Code for malpractice arising from an act or omission in the scope of his employment...." ■ This section and other sections concerning mental institutions reflect the policy recommended by the Law Revision Commission. That policy

provides immunity for diagnosing, treating, confining, and releasing the mentally ill, but makes clear "that public entities and employees are liable for injuries caused by negligent or wrongful acts or omissions in administering or failing to administer prescribed treatment or confinement." (4 Cal. Law Revision Com. Rep. 830; see Gov. Code, §§ 855.8, 856.)

In this case, the placing of Mrs. Hawley in soft restraints or the using of bedrails are steps in administering a course of treatment, not in the decision whether to treat her. The employees can therefore be held liable for negligence in such administration, and the "public entity shall pay" any judgment against them according to the prescribed procedure. (Gov. Code, §§ 825-825.6.)

Under section 854.8, subdivision (d), the public entity cannot be directly sued to enforce its liability for negligence. That subdivision refers to article 4 of chapter 1, part 2 (Gov. Code, §§ 825-825.6), which provides the procedure whereby public entities pay judgments against their employees. First, however, there must be a judgment against an employee or employees licensed under division 2 of the Business and Professions Code, such as doctors, nurses, and psychiatric technicians. The 1963 legislation, therefore, limits the remedies that were available under *Muskopf* by making the county's liability solely derivative.

Mrs. Hawley contends, however, that the 1963 legislation cannot be applied retroactively to restrict the county's liability under *Muskopf*. She contends that although the Legislature can retroactively abrogate rights provided by statute, it cannot retroactively change the common law to abrogate a "vested right." (See *Callet* v. *Alioto*, 210 Cal. 65 [290 P. 438].) We find no constitutional basis for distinguishing statutory from common-law rights merely because of their origin (see 5 Cal. Law Revision Com. Rep. 526), and describing a right as "vested" is merely conclusory. (*Flournoy* v. *State of California*, 230 Cal.App.2d 520, 531 [41 Cal.Rptr. 190].) We must consider instead the reasons advanced to justify retroactive application of a statute to determine if it is constitutionally permissible. Although the Legislature normally legislates prospectively, it can provide for retroactive application of a statute if it has a reasonable basis for doing so. Here, the Legislature responded to this court's abrogation of the common-law doctrine of governmental immunity by enacting comprehensive legislation to govern the liability of public employees and public

entities. It expressly made the legislation retroactive "to the full extent that it constitutionally can be so applied" (Stats. 1963, ch. 1681, § 45, subd. (a); cf. *Corning Hospital Dist.* v. *Superior Court,* 57 Cal.2d 488, 494 [20 Cal.Rptr. 621, 370 P.2d 325]; *Callet* v. *Alioto,* 210 Cal. 65 [290 P. 438]) to place all potential plaintiffs whose claims are not barred by the statute of limitations on an equal footing. Retroactivity also serves to clarify the fiscal responsibilities of public agencies following the abrogation of governmental immunity, thus preventing the uncertainties that would result if the scope of their liability were left to case-by-case resolution in the courts.

It is not unfair to apply the statute retroactively. Potential plaintiffs who were injured before the *Muskopf* case was decided clearly could not have relied on that case. (Cf. *Wells Fargo & Co.* v. *City & County of San Francisco,* 25 Cal.2d 37 [152 P.2d 625]; *Norton* v. *City of Pomona,* 5 Cal.2d 54 [53 P.2d 952].) Moreover, it is purely speculative to assume that other potential plaintiffs would have protected themselves in some way during the period between the *Muskopf* decision and the moratorium legislation had they foreseen statutory modification of that case. Indeed, to hold that the *Muskopf* case created vested rights that could not be abrogated by the 1963 legislation would create a special class of favored plaintiffs: those who had causes of action that were not barred by the statute of limitations at the time of the *Muskopf* decision but that would be barred by the 1963 legislation.[3] Such a holding would give unlimited retroactive effect to the *Muskopf* case and no retroactive effect to the 1963 legislation. The Legislature, as well as the court, however, is competent to define the retroactive scope of an overruling decision. (*Forster Shipbldg. Co.* v. *County of Los Angeles,* 54 Cal.2d 450, 459 [6 Cal.Rptr. 24, 353 P.2d 736].) If it adopts a reasonable solution to the problems created by such a decision, as it has done here, its determination will be upheld.

---

[3]The dictum in *Jones* v. *City of Los Angeles,* 215 Cal.App.2d 155, 156-157 [30 Cal.Rptr. 124], referring to the cause of action as vested, could only be referring to its continuation through the moratorium period. No legislation had been passed at the time of that case, and nothing in *Muskopf* or in *Corning Hospital Dist.* v. *Superior Court,* 57 Cal.2d 488 [20 Cal.Rptr. 621, 370 P.2d 325], supports a holding that the Legislature cannot constitutionally modify the rules of governmental immunity retroactively. (See, e.g., *Flournoy* v. *State of California, supra,* 230 Cal. App.2d 520; *City of Burbank* v. *Superior Court,* 231 Cal.App.2d 675, 682-683 [42 Cal.Rptr. 23].)

Mrs. Hawley contends, however, that section 854.8 denies her the equal protection of the laws on the ground that the county would be directly liable had she been injured in a medical ward rather than a mental ward. (See U.S. Const., 14th Amend.; Cal. Const., art. I, §§ 11, 21; Cal. Const., art. IV, § 25.) The Legislature has broad discretion in making classifications, and its decision will be upheld unless the classification has no reasonable relationship to any proper legislative purpose. (*Williamson* v. *Lee Optical of Oklahoma*, 348 U.S. 483, 489 [75 S.Ct. 461, 99 L.Ed. 563]; *Blumenthal* v. *Board of Medical Examiners*, 57 Cal.2d 228, 233 [18 Cal.Rptr. 501, 368 P.2d 101].) In limiting governmental liability for the operation of mental institutions, the Legislature could appropriately consider the special problems of diagnosis and treatment in the field of mental illness, the problems of excessive patient load in public mental institutions that must take all patients committed to them, and the problems that may arise with respect to the competency of the mentally ill as witnesses. (See 4 Cal. Law Revision Com. Rep. 830; *People* v. *McCaughan*, 49 Cal.2d 409, 419-422 [317 P.2d 974].) We cannot say that such factors are insufficient to justify the Legislature in treating mental patients as a class by themselves and in providing that only when they can establish the liability of specific public employees should the public agency be liable to them.

Let the peremptory writ issue as prayed.

McComb, J., Peters, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.