[Civ. No. 22492.   First Dist., Div. One.   Mar. 7, 1966.]

RALPH A. LOOP et al., Plaintiffs and Appellants, v. STATE OF CALIFORNIA, Defendant and Respondent.

Earl S. Odell and William Struthers for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, and Robert H. Connett, Deputy Attorney General, for Defendant and Respondent.

Harry S. Fenton, Robert F. Carlson and Kenneth G. Nellis, as Amici Curiae on behalf of Defendant and Respondent.

SIMS, J.—Plaintiffs purported to appeal from an order of the trial court which sustained the demurrer of the defendant State of California without leave to amend. By stipulation and order for augmentation and correction of the record on appeal,

there was brought before this court the judgment of dismissal which was signed and entered following the making and entry of the order first mentioned. The appeal therefore may be and now is considered as from the latter judgment. (Cal. Rules of Court, rule 2(c); *Vibert* v. *Berger* (1966) 64 Cal.2d 65, 68-69 [48 Cal.Rptr. 886, 410 P.2d 390]; *Evola* v. *Wendt Constr. Co.* (1958) 158 Cal.App.2d 658, 660-662 [323 P.2d 158]; *Willson* v. *Burner* (1964) 230 Cal.App.2d 947, 948 [41 Cal.Rptr. 449].)

■ The case involves the propriety of the retroactive application of the 1963 amendments to the Government Code which deal comprehensively with problems of governmental immunity to a cause of action which arose between February 27, 1961, the date on which the decision in *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457] became final, and September 15, 1961, the effective date of chapter 1404, Statutes of 1961 which provided a moratorium during which the Legislature could study the problems created by the *Muskopf* decision and enact appropriate legislation on the subject. (See *Thelander* v. *Superior Court* (1962) 58 Cal. 2d 811, 814 [26 Cal.Rptr. 643, 376 P.2d 571]; *Corning Hospital Dist.* v. *Superior Court* (1962) 57 Cal.2d 488, 492-495 [20 Cal.Rptr. 621, 370 P.2d 325].)

According to the allegations of the complaint the plaintiffs on May 1, 1961, voluntarily admitted their son to the Napa State Hospital for the purpose of receiving medical care, treatment and attention as a patient, and in reliance on proper and careful supervision of the son during his stay. It is further alleged that the hospital thereupon undertook to care for and attend their son for as long as he might need such care and attendance, and to render such proper and careful supervision; that the hospital was engaging in a proprietary activity and that plaintiffs could have admitted their son to a private institution for like care, but that the hospital accepted him as a normal paying patient.

It is charged against the state, a fellow patient, the hospital superintendent, and a hospital attendant: "That defendants, and each of them, so negligently and carelessly failed to provide proper attention and supervision as to allow the . . . [son] to become involved in a fight in a ward of the said hospital on July 27, 1961, with defendant . . . patient at Napa State Hospital; as a proximate result of a negligent conduct and ommissions [*sic*] of defendants STATE OF CALIFORNIA, [superintendent] and [attendant], the . . . [son]

received injuries in the fight as a result of which he 'died on August 3, 1961; that defendant [patient] did willfully and intentionally strike and hit the . . . [son] causing his head to strike a concrete block wall; that the said fight and injuries would not have been caused had there been proper and careful supervision by defendants over their patients.'' Only the cause of action alleged against the state is involved in this proceeding.

The action was commenced in Sacramento County by complaint verified May 18, 1962, and filed May 23, 1962. On October 14, 1963, the state filed its demurrer, and a notice of motion for an order transferring the action to Napa County, which motion was thereafter made and granted. The court in the latter county sustained the demurrer without leave to amend on each of the grounds asserted by the state, namely: that the complaint does not state facts sufficient to state a cause of action against the state; that the court has no jurisdiction of the subject matter of the action; and that the court has no jurisdiction of the person of the state. This appeal ensued.

The state relies upon the provisions of chapter 1681, Statutes of 1963 (effective September 20, 1963) found in subdivision (a) of section 45 which declare: ''This act applies retroactively to the full extent that it constitutionally can be so applied'' (Stats. 1963, ch. 1681, § 45, subd. (a), p. 3288); and the provisions of section 1 of that statute which are now found in section 854.8 of the Government Code reading as follows: ''(a) Notwithstanding any other provision of law, [with exceptions not directly applicable herein] a public entity is not liable for: (1) An injury proximately caused by any person committed or admitted to a mental institution. (2) An injury to any person committed or admitted to a mental institution.'' (Stats. 1963, ch. 1681, § 1, p. 3280.) By the provisions of section 810.8 as added to the Government Code ''injury'' includes ''death.''

It heretofore has been determined that the foregoing provisions apply to a cause of action for an injury which was suffered prior to the effective date of *Muskopf* and which was reduced to suit prior to the enactment of the moratorium legislation. (*County of Los Angeles* v. *Superior Court* (1965) 62 Cal.2d 839, 844 [44 Cal.Rptr. 796, 402 P.2d 868].)[1] Further-

---

[1]Similar results in regard to other provisions of the 1963 legislation have been pronounced in the following cases: *Morgan* v. *County of Yuba* (1964) 230 Cal.App.2d 938, 942 [41 Cal.Rptr. 508]; *Flournoy* v. *State*

more, the provisions of these same sections have been held applicable to a cause of action arising after the moratorium legislation and prior to the enactment of the 1963 legislation. (*Moxon* v. *County of Kern* (1965) 233 Cal.App.2d 393, 396 [43 Cal.Rptr. 481].)[2]

A learned commentator in reviewing the Legislature's power to modify the post-*Muskopf* law retroactively, prior to the enactment of the 1963 statute, categorized the causes of action which might possibly be affected by such legislation as (1) those recognized under pre-*Muskopf* law; (2) causes of action not recognized prior to the *Muskopf* decision, but which accrued prior to the date it became final; (3) causes of action which were not previously recognized but which accrued during the period between the *Muskopf* decision and the effective date of the moratorium legislation; and (4) similar causes of action which arose during the moratorium period. (Van Alstyne, *Governmental Tort Liability: Judicial Lawmaking in a Statutory Milieu*, 15 Stan.L.Rev. 163, 234-236.) From the foregoing plaintiffs urge that the sustaining of restrictions upon causes of action in the second and fourth categories cannot affect this cause of action, which falls in the third category, because the right thereto is vested.

After reviewing the authorities touching on the subject the author of the foregoing article concluded as follows: ''Therefore, subject to certain qualifications to be discussed, it would seem to follow that causes of action, whether recognized by statute or grounded in common-law doctrine accruing before September 15, 1961, may not be validly abolished in connection with enactment of a general legislative program relating to governmental tort liability.'' (Van Alstyne, *op. cit.*, p. 244.) Before arriving at this conclusion the only significant distinction noted between pre-*Muskopf* causes of action and interim

---

*of California* (1964) 230 Cal.App.2d 520, 530-537 [41 Cal.Rptr. 190]; *Wright* v. *Arcade School Dist.* (1964) 230 Cal.App.2d 272, 281 [40 Cal. Rptr. 812].

[2]Similar results in regard to other provisions of the 1963 legislation have been pronounced in the following cases: *Heieck & Moran* v. *City of Modesto* *(Cal.App.) 46 Cal.Rptr. 692; *Boyer* v. *County of Contra Costa* (1965) 235 Cal.App.2d 111, 112-114 [43 Cal.Rptr. 58]; *Ne Casek* v. *City of Los Angeles* (1965) 233 Cal.App.2d 131, 141-142 [43 Cal.Rptr. 294]; *City of Burbank* v. *Superior Court* (1965) 231 Cal.App.2d 675, 682-683 [42 Cal.Rptr. 23]; *Hayes* v. *State of California* (1964) 231 Cal. App.2d 48, 49-51 [41 Cal.Rptr. 502]; *Shakespeare* v. *City of Pasadena* (1964) 230 Cal.App.2d 375, 380-381 [40 Cal.Rptr. 863].

---

*A hearing was granted by the Supreme Court on November 24, 1965. The final opinion of that court is reported in 64 Cal.2d 229 [49 Cal.Rptr. 377, 411 P.2d 105].

causes of action was that the latter fell within the language of the 1961 moratorium legislation. It provided that upon the expiration of the moratorium "an action may be . . . maintained in the manner prescribed by law on any cause of action which arose on or after February 27, 1961 . . . if and only if both of the following conditions are met: . . . (2) the bringing of the action was barred solely by the provisions of this act *and is not barred by any other provision of law enacted subsequent to the enactment of this act.*" (Stats. 1961, ch. 1404, § 4, subd. (a), p. 3210; italics added.) The author concluded that this reservation, since it was retroactive itself, could convey no greater authority than the Legislature might otherwise have to abolish or restrict causes of action arising in that period. (*Id.*, p. 244.) In discussing qualifications on his general conclusions, the commentator does note that in the case of newly recognized pre-*Muskopf* causes of action there is first a total lack of reliance and secondly an element of "windfall" benefits which would strengthen the case for sustaining a retrospective elimination of pre-*Muskopf* claims as compared to post-*Muskopf* claims (*id.*, pp. 246-247). It is this distinction upon which plaintiffs now rely.

The plaintiffs in *Muskopf* and those similarly situated with a cause of action arising before February 27, 1961, never had a recognizable cause of action before that decision, and to take away the right created by that decision to enforce the claims by suit may be equated to depriving the claimant of a windfall.[3] There was no reliance in or expectation of a right to sue for tort damages either at the time of entering into the relationship out of which the injury arose or at the time of the injury itself.

In *County of Los Angeles* the opinion recites: "It is not unfair to apply the statute retroactively. Potential plaintiffs who were injured before the *Muskopf* case was decided clearly could not have relied on that case." (62 Cal.2d at p. 845.)

The plaintiffs herein, and others similarly situated, may well claim that both at the inception of the relationship out of which the injury arose, and at the time of the injury itself, they were entitled to rely upon the principle that the state as owner of the hospital would respond in damages for the torts of its agents. As a practical matter, however, there is rarely

---

[3]It may be equally accurate, however, to say that the state under the ghost of sovereign immunity had enjoyed a windfall of which it was deprived by *Muskopf*, and that the decision was a vindication of the true state of affairs and laid the ghost to rest.

such reliance in the case of a tort claim. (See Van Alstyne, *op. cit.*, p. 246; Greenblatt, *Judicial Limitations on Retroactive Civil Legislation* (1956) 51 Northwestern U.L.Rev. 540-567.) The complaint candidly alleges that plaintiffs' son was placed in the state institution "in reliance on proper and careful supervision of [the son] during his stay." It is also alleged that they could have admitted their son to a private institution for like care. It is not alleged that the decision was made because a little over two months before the State Supreme Court had said they would have a right to bring an action against the state if their son died for lack of proper care and supervision. Nor is it conceivable that it could so be alleged. Persons seek treatment for themselves or their dependents at the institution where they can secure the best care consistent with their ability to pay. The question of the eventualities in case the contemplated care and treatment is not forthcoming is not an element then generally considered, much less investigated or spoken of, unless it be when the institution presents a parent with waiver and consent forms which he is generally too perplexed and concerned to read, or understand, if he does read them.

If such concern were an element of reliance the wary parent or patient would have ascertained that on March 24, 1961, before the patient was admitted, legislation had been introduced which proposed that *Muskopf* not be the law of the land from February 27, 1961, until after the adjournment of the 1963 legislative session; and that on July 27, 1961, before the patient received the injuries from which he died, this legislation (Stats. 1961, ch. 1404, p. 3209) was signed into law to become effective, ostensibly retroactively, after the adjournment of the 1961 Legislature. There then remained the potential expectation that an action such as this would be proper in the event of an accident such as occurred if, but only if, (1) the Legislature thereafter failed to act so as to restore *Muskopf*, or acted to establish a statutory scheme which did not bar such an action, or (2) the courts found the declared purpose of the 1961 legislation and any subsequent legislation barring such an action unconstitutional if applied to an injury occurring before September 15, 1961. The wary relying parent certainly should have removed his dependent from the state institution before September 15th, and, if he had noted the shock which *Muskopf* ignited among public entities which had theretofore relied upon the doctrine of sovereign immunity, he would have been hesitant to prognosticate the manner in which

the courts would view the Legislature's then present and prospective acts. If the litigant by leaving the orphan on the bench can force an unwanted adoption on the court, the latter's freedom of choice is greatly curtailed. In short, "describing a right as 'vested' is merely conclusory" (*County of Los Angeles* v. *Superior Court, supra*, 62 Cal.2d at p. 844), and the litigant's belief that a cause of action which might accrue would be "vested" should not bind the hands of the tribunal which seeks to determine whether "the reasons advanced to justify retroactive application of a statute" make it "constitutionally permissible." (*Id.*)

If attention is directed to reliance in the sense of reducing a cause of action to an action filed in court with attendant expense of time and money in pursuit of one's legal remedy, the focus falls on the following statement in *County of Los Angeles*: "Moreover, it is purely speculative to assume that other potential plaintiffs would have protected themselves in some way during the period between the *Muskopf* decision and the moratorium legislation had they foreseen statutory modification of that case. Indeed, to hold that the *Muskopf* case created vested rights that could not be abrogated by the 1963 legislation would create a special class of favored plaintiffs: those who had causes of action that were not barred by the statute of limitations at the time of the *Muskopf* decision but that would be barred by the 1963 legislation. [Fn. omitted.] Such a holding would give unlimited retroactive effect to the *Muskopf* case and no retroactive effect to the 1963 legislation. The Legislature, as well as the court, however, is competent to define the retroactive scope of an overruling decision. (*Forster Shipbldg. Co.* v. *County of Los Angeles*, 54 Cal.2d 450, 459 [6 Cal.Rptr. 24, 353 P.2d 736].) If it adopts a reasonable solution to the problems created by such a decision, as it has done here, its determination will be upheld." (62 Cal.2d at p. 845.) In this connection the Muskopfs and the plaintiffs are in the same position. After the reversal in the former case the Muskopfs and those similarly situated had the same opportunity to go forward as did those whose claims arose during the interim period, so the comments as to the former are applicable to the latter. (See Van Alstyne, *op. cit.*, p. 347.) Furthermore, the considerations heretofore noted in connection with the introduction, passage and effective date of the 1961 legislation are particularly pertinent to this action which was filed some eight months after the effective date of the purportedly retroactive moratorium legislation.

In *Flournoy* v. *State of California, supra,* the court gave recognition to criteria which have been suggested in a review of United States Supreme Court decisions involving retroactive legislation. The opinion states: "First of all, use of the term 'vested right' as a term of approach to problem settlement is not helpful. The term is 'conclusory.' '[A] right is vested when it has been so far perfected that it cannot be taken away by statute.' (See Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation* (1960) 73 Harv.L.Rev. 692, 696, 698.) It is said in *Miller* v. *McKenna,* 23 Cal.2d 774, 783 [147 P.2d 531] : '. . . [A] vested right, as that term is used in relation to constitutional guaranties, implies an interest which it is proper for the state to recognize and protect, and of which the individual may not be 'deprived arbitrarily without injustice. The question of what constitutes such a right is confided to the courts.' . . . Each decision, however, appears to rationalize its asserted rule on some basis and these bases are susceptible to statement in terms of policy factors, the expression of which by Mr. Hochman (*op. cit.*, p. 697) we accept as workable: '. . . These factors are: the nature and strength of the policy interest served by the statute, the extent to which the statute modifies or abrogates the asserted preenactment right, and the nature of the right which the statute alters.' " (230 Cal.App.2d at pp. 530-531 and 532.)[4]

The nature of the right which retroactive application of the statute will abolish has been noted. The nature of the policy interest to be served by such application is found in the recommendations made to the Legislature. These are set forth in *Boyer* v. *County of Contra Costa* (1965) 235 Cal.App.2d 111 [43 Cal.Rptr. 58], as follows: "In Recommendation Relating to Sovereign Immunity of the California Law Revision Commission (No. 1, Jan. 1963, p. 832), the commission recommended that 'the legislation that is adopted by the Legislature relating to sovereign immunity be given a retroactive effect to the full extent that it constitutionally can be given

---

[4]See also: Van Alstyne, *op. cit.*, 15 Stan.L.Rev. 163, 229, et seq., Slawson, *Constitutional and Legislative Considerations in Retroactive Lawmaking* (1960) 48 Cal.L.Rev. 216; Greenblatt, *op. cit.*, 51 Northwestern U.L.Rev. 540; Braun, *Vested Rights and the Portal-to-Portal Act* (1948) 46 Mich.L.Rev. 723 et seq.; Stimson, *Retroactive Application of Law— A Problem in Constitutional Law* (1939) 38 Mich.L.Rev. 30; Smead, *The Rule Against Retroactive Legislation: A Basic Principle of Jurisprudence* (1936) 20 Minn.L.Rev. 775; Smith, *Retroactive Laws and Vested Rights* (1927) 5 Tex.L.Rev. 231.

such an effect,' pointing out that 'This will permit the courts, acting under this legislation, to develop a uniform body of law applicable to all cases involving the liability of public entities instead of developing one group of rules applicable to pre-*Muskopf* [fn. omitted] cases, another group of rules applicable to cases arising after *Muskopf* but before the moratorium legislation, another group of rules applicable to cases arising under the moratorium legislation, and still another group of rules applicable to cases arising after the effective date of the legislation to be adopted.' " (235 Cal.App.2d at p. 114.) This policy was presaged by language in *Corning Hospital Dist.* (57 Cal.2d 488, 492) and *Thelander* (58 Cal.2d 811, 814),[5] and has been alluded to in many of the cases noted above (see fns. 1 and 2), and is recognized and applied in *County of Los Angeles* (62 Cal.2d at p. 845.)

The strength of the policy interest of uniformity—"to place all potential plaintiffs whose claims are not barred by the statute of limitations on an equal footing"—and its attendant effects—"Retroactivity also serves to clarify the fiscal responsibilities of public agencies following the abrogation of governmental immunity, thus preventing the uncertainties that would result if the scope of their liability were left to case-by-case resolution in the courts" were noted and applied in *County of Los Angeles* (62 Cal.2d at p. 845). The same considerations apply to the interim causes of action.

Finally, analysis of the extent to which the retroactive application of the general legislative scheme modifies and abrogates the cause of action recognized by *Muskopf* reflects that the right to sue the individual tortfeasor, although he is a public agent, is not barred but expressly conferred, with resulting liability to the public entity for indemnity under certain conditions. (See Gov. Code, §§ 854.8, subd. (d), 855.8, subd. (c), 855.8, subd. (d), 856, subd. (c) and §§ 825-825.6; *County of Los Angeles* v. *Superior Court, supra,* 62 Cal.2d 839, 844.)

It is concluded that the retroactive application of the 1963 legislation to causes of action arising within the so-called interim period is a reasonable exercise of legislative power, and that the mandate of the Legislature that it be so applied may

---

[5]The learned trial judge on the basis of the indicia suggested by these authorities, but without the touchstones of the later decisions, rejected the distinctions urged by plaintiffs and applied the policy of uniformity to justify retroactive application.

be executed without violation of any right protected by constitutional principles.

The judgment is affirmed.

Sullivan, P. J., and Molinari, J., concurred.