[Civ. No. 30962. Second Dist., Div. Four. Aug. 31, 1967.]

BEVERLY JEAN GOFF, Plaintiff and Appellant, v. COUNTY OF LOS ANGELES, Defendant and Respondent.

Joseph W. Fairfield and Ethelyn F. Black for Plaintiff and Appellant.

Harold W. Kennedy, County Counsel, and Lloyd S. Davis, Assistant County Counsel, for Defendant and Respondent.

BISHOP, J. pro tem.*—Plaintiff brought this action July 7, 1961, to recover three hundred thousand dollars damages from the defendant county because of injuries suffered by her on February 27, 1961, as a result of her unsuccessful attempt to commit suicide. Early in 1966, the trial court heard and granted a motion for a nonsuit, made upon plaintiff's opening statement which was supplemented by a couple of exhibits. We are quite aware that, as stated in *Bias* v. *Reed* (1914) 169 Cal. 33, 37-38 145 P. 516, 517-518], and quoted in *Hartford Acc. & Indem. Co.* v. *Bank of America* (1963) 220 Cal.App.2d

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

545, 547 [34 Cal.Rptr. 23-24]: " 'It is no doubt true . . . that the practice of directing a verdict, in advance of the introduction of evidence, upon the opening statement of one or the other party is a dangerous one and that an order granting such motion can be upheld only where it is clear that counsel has undertaken to state all of the facts which he expects to prove, and it is plainly evident that the facts thus to be proved will not constitute a cause of action or a defense, as the case may be.' '' But it is clear, in this case, that counsel for the plaintiff undertook to state all of the facts which he expected to prove, and we find it plainly evident that they will not constitute a cause of action in plaintiff's favor. We are, therefore, affirming the judgment of nonsuit from which plaintiff has appealed.

We gather our information as to the initial moves in the trial of this case, first from the recitals of the judgment of nonsuit and then from the reporter's transcript of the events that took place in chambers.[1] The pertinent recitals of the judgment leading up to it read: "The above entitled action having come on regularly for trial . . . on February 10, 1966, . . . and counsel having agreed that the case presented at the outset a question of law as to whether the provisions of the 1963 Governmental Tort Liability Act would bar any recovery by the plaintiff, and it having been stipulated that this question of law could be determined by a motion for an entry of nonsuit on plaintiff's opening statement and upon the medical records offered in evidence as plaintiff's exhibits 1 and 2 . . . and the defendant *County of Los Angeles* having made a motion for an entry of nonsuit based upon said opening statement and on the ground that any causes of action based upon the allegations contained in the complaint and under the facts offered to be proved in said opening statement would be barred by the immunity provisions set forth in the 1963 Governmental Tort Liability Act. . . .''

From the minutes of the court we learn that a conference was ''held by the court and counsel in chambers,'' where, according to this reporter's transcript, plaintiff's counsel made this opening statement: ''The main point is making our opening statement upon what we want to predicate our lawsuit.'' Plaintiff thereupon introduced two exhibits, one being

---

[1] The reporter's transcript gives the date of the hearing in chambers as ''Thursday, January 10, 1966,'' but it was stipulated at the hearing of arguments on the appeal that this was error; the correct month was February.

"the medical file of the plaintiff Beverly Jean Goff, at the Los Angeles County General Hospital" which became Exhibit 1, then counsel continued: "Now, in addition to these two documents the plaintiff will prove as follows: That on February 17th Beverly Jean Goff was admitted as a patient in the psychiatric unit of the Los Angeles County General Hospital; that she was brought down at the time of her admission to the hospital by her Grandfather, Louis Goff, and a relative of hers—I think it is her Uncle, a Dr. Victor Ahlheim, A-H-L-H-E-I-M, and Dr. Ahlheim is not a medical doctor, and at the time they brought the patient in they advised the proper representatives in the hospital that she had attempted to commit suicide and that if they should release her from the hospital to advise either her Grandfather, Mr. Louis Goff, or Dr. Victor Ahlheim that she was being released, that can come down and pick her up.

". . . . . . . . . .

"Briefly, our case is that Beverly Jean Goff was a depressed person with suicidal tendencies; that at one particular occasion she had attempted to commit suicide and was a patient in the psychiatric unit of the Los Angeles County General Hospital; that after treatment she was released; that at this particular instance she again attempted to commit suicide and was brought into the hospital by Dr. Ahlheim and her Grandfather; that the hospital, at that time, knew she had a record for attempted suicide on previous occasions; that after being in the hospital for a period of about ten days, which is far in excess of the 72 hours emergency treatment, they gave her a quarter, told her she was perfectly all right, and gave her the 25c for bus fare to go home; whereupon she walked out of the hospital, went to the nearest bridge and just jumped off with another suicide attempt. and that was done in about an hour or an hour and a half of release of the hospital, and that as a result of the jumping off the San Bernardino bridge she sustained the injuries we are complaining of. . . ."

The better to understand the situation, before weighing the facts set forth in plaintiff's opening statement, we should have freshly in mind several statutory provisions. Section 6000 of the Welfare and Institutions Code began, in 1961, with this sentence: "The board of supervisors of each county may maintain in the county hospital . . . suitable facilities and hospital services for the detention, supervision, care and treatment of persons who are mentally ill, mentally disordered, mentally deficient or retarded. . . ." Section 6001

makes clear: "As used in this chapter 'county psychopathic hospital' means the hospital, ward or facility provided by the county pursuant to the provisions of Section 6000." And so we find in section 6002: "The . . . person in charge of the county psychopathic hospital may receive, detain, supervise, care for or treat in the hospital, or a period not to exceed ninety days, any person . . .

· "(c) Who voluntarily makes a written application to . . . the person in charge thereof for admission into the hospital for . . . treatment or for observation in the hospital."

Section 6003, at the time of interest to us, opened with this sentence: "No adult person received into the county psychopathic hospital under the provisions of subdivision (b) or (c) of Section 6002 of this code shall be detained therein for more than seven days, after having given notice, in writing, to the . . . person in charge, of his desire to leave the hospital."

Now we bring these sections of the code, the plaintiff and the county together. In Exhibit 1, which was a part of the opening statement, we find a "Voluntary Application for Admission" dated "2-17, 1961" bearing "Beverly Goff" as the "signature of patient," whose age was 27; the signature of "J. Louis Goff (father)" as "Witness." This form is addressed "To the Director the Los Angeles County General Hospital" and states:

"1. I hereby apply for admission as a Voluntary patient for treatment by the Medical Staff, under the provisions of Sec. 6002-6004 Welfare and Institutions Code, California.

"· . . . . . . . . . . . . . .

"2. I agree to give seven days notice, in writing, before leaving without your permission.

"3. My reasons for asking admission to the Hospital are as follows: Observation and Treatment."

We now have the story of the plaintiff's admission and sojourn in the county's facilities. If the county is liable in damages it is because of something that happened, or should have but failed to happen, growing out of that relationship. But section 854.8 of the Government Code declares: "Notwithstanding any other provision of law, except as provided in subdivisions (b), (c) and (d)[2] of this section, a public entity is not liable for: . . . (2) An injury to any person committed or admitted to a mental institution."

Then we find in section 815.2 of the Government Code,

---

[2]There is nothing pertinent to this case in subdivisions (b), (c) or (d).

"(b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." To be read in connection with this section we find in section 820.2 of the same code: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

Plaintiff is quite aware of the provisions we have quoted, in the two preceding paragraphs, and her briefs on appeal are spent in an endeavor to avoid their immunizing effect. She contends, first, that they were impotent in this case, because she was held in custody by the county in its psychopathic unit, for more than 72 hours. Another contention, based on this same premise—that she was held an unlawful length of time—was that county action was motivated, not by consideration of what was the wiser course to pursue, but by a consciousness of the illegality of further detention. Even in his oral argument upon the hearing of this appeal, plaintiff's counsel continued to claim that defendant's hospitality could not be lawfully extended beyond the 72-hour period.

■ The plaintiff was hospitalized for more than 72 hours it is true, but not illegally. There was a limitation of 72 hours placed upon some detentions for mental conditions. It was found in section 5050.3 of the Welfare and Institutions Code (now section 5880 of that code) where we read: "Within said seventy-two (72) hours the person shall be discharged from the institution unless a petition of mental illness is presented to a judge of the superior court and the court issues an order for detention of such person, or unless the person is admitted as a patient under any other provision of law." It is patent that this provision did not apply to plaintiff's detention for a combination of two reasons: (a) She was admitted, as we have already noted, under the provisions of sections 6000-6004 of the Welfare and Institutions Code, and so was a person "admitted as a patient under any other provision of law," and (b) the provision under which she was admitted itself prescribes the limitation of time that she could be the county's guest as "for a period not to exceed ninety days." There is not a word in plaintiff's opening statement to even suggest that those in charge of the unit in which plaintiff was being cared for entertained the erroneous idea that legally they could not be hosts any longer, and for that reason released her.

We find no more persuasive plaintiff's contention that the section last mentioned is unconstitutional, as applied to a county. Appellant recognizes that the Supreme Court, in *County of Los Angeles* v. *Superior Court* (1965) 62 Cal.2d 839 [44 Cal.Rptr. 796, 402 P.2d 868], has spoken favorably of section 854.8, holding that it should be applied retroactively, but her recognition of the court's holding is not without criticism : she notes that it does not consider the problem of extension of immunity to a county, and contends that that may not be done. In this connection we refer to what was said in *Reed* v. *City & County of San Francisco* (1965) 237 Cal.App.2d 23, 24 [46 Cal.Rptr. 543, 544], where a section, a close kin of section 854.8, was under consideration: "Government Code section 844.6, subdivision (a) provides in relevant part that '. . . a public entity is not liable for: (1) An injury proximately caused by any prisoner. (2) An injury to any prisoner.' Appellant concedes he has no cause of action if this section is constitutional. He contends, however, that it operates to deprive him of his constitutional guarantees of equal protection and due process of law. We have concluded that this contention is without merit and that the judgment dismissing appellant's complaint must be affirmed." (See also *Sanders* v. *County of Yuba* (1967) 247 Cal.App.2d 748 [55 Cal.Rptr. 852, 856] and cases cited.) ■ We are persuaded that section 854.8 should not be declared to be unconstitutional.

Reliance is placed by appellant on *Morgan* v. *County of Yuba* (1964) 230 Cal.App.2d 938 [41 Cal.Rptr. 508]. In this wrongful death case the claim against the county was based upon the failure of the sheriff and his deputies to warn the deceased that a person, whose arrest she had caused, had been released from custody. Both the deceased and the sheriff's force had been warned that the prisoner had threatened to kill the deceased, and they had agreed to give warning if he was released. The appellant's reliance on this case is well placed at one point: the obligation to give the warning, that had been promised, was held not to be discretionary in nature, and so the county did not escape responsibility for the death of the person not warned. That case is not authority for holding the county in our case, however. ■ A fact made much of, throughout the *Morgan* case opinion, is lacking in ours : we have no promise to the plaintiff, nor to her relatives, to give warning of her release. Of even greater significance, the injured person in the *Morgan* case was not a prisoner, as in the

*Reed* case, nor ''a person committed or admitted to a mental institution.'' The immunity afforded by section 844.6 (*Reed* case) and 854.8 (this case) did not apply. Therefore, the ruling that the county was liable in the *Morgan* case, does not apply here. Neither of the sections just referred to limit their immunity to cases where the county's action was discretionary and not ministerial, although, plainly, it was discretionary in this instance.

We agree with the trial judge that the opening statement on behalf of the plaintiff did not disclose that she had a cause of action against the county.

The judgment of nonsuit is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied September 25, 1967, and appellant's petition for a hearing by the Supreme Court was denied October 25, 1967.