[No. B045337. Second Dist., Div. Five. Sept. 10, 1991.]

CESAR GUZMAN, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

1344

**COUNSEL**

Vernon C. Krol and Diane E. Berley for Plaintiff and Appellant.

Thomas & Price, Craig Donahue, Greines, Martin, Stein & Richland, Martin Stein, Timothy T. Coates and Carolyn Oill for Defendant and Respondent.

## Opinion

**BOREN, J.—**

### Introduction

Plaintiff Cesar Guzman suffered physical injury while a patient at defendant County of Los Angeles Hospital (Martin Luther King, Jr./Drew Medical Center; hereinafter, Drew Hospital). On plaintiff's complaint for negligent treatment, the trial court granted summary judgment to defendant on the ground that defendant was immune from liability under Government Code section 854.8 because plaintiff was involuntarily confined for mental evaluation pursuant to Welfare and Institutions Code section 5150 at the time of the alleged negligent treatment. Plaintiff contends that the immunity provided by section 854.8 does not apply because he was not physically confined in the psychiatric facility of Drew Hospital. We do not agree with the contention and affirm the judgment.

### Facts

Plaintiff was admitted to Drew Hospital on December 3, 1983, with superficial lacerations to his wrists. A medical doctor, Serena Young, examined plaintiff and determined that the lacerations were not serious enough to warrant further hospitalization. However, because the wounds appeared to be the result of a suicide attempt, a psychiatrist, Omar Schusselin, M.D., was summoned, and he concluded that plaintiff, who had a history of drug abuse, including the use of PCP, cocaine and heroin, was suffering from suicidal ideation. As a result, Dr. Schusselin placed plaintiff in a 72-hour involuntary detention for mental evaluation and treatment pursuant to Welfare and Institutions Code section 5150.[1]

Augustus Hawkins Mental Health Center (Hawkins Center) is the portion of Drew Hospital which primarily handles patients admitted for mental evaluation. However, at the time plaintiff was placed on a 72-hour hold for mental evaluation and treatment, there were no available beds in the Hawkins Center. Thus, during the 72 hours plaintiff was confined, he was kept in a single room in a medical ward, characterized by one of the treating

---

[1]In pertinent part, Welfare and Institutions Code section 5150 states: "When any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, member of the attending staff, as defined by regulation, of an evaluation facility designated by the county, . . . or other professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Mental Health as a facility for 72-hour treatment and evaluation."

physicians, Buford Gibson, Jr., as being a "reasonably secure area" and was monitored by psychiatrists and observed by nurses concerning his mental condition. During the 72-hour period, hospital personnel continued to check for available beds in Hawkins Center but none appeared until after plaintiff was released from Drew Hospital.

While being treated in Drew Hospital, plaintiff received four injections of Demerol. Shortly before his release from Drew Hospital, plaintiff began to experience pain in one of his legs. A neurosurgeon retained by plaintiff as an expert witness was prepared to testify that plaintiff's injury was a permanent one known as "foot drop" and that it was proximately caused by one of the Demerol injections.

## DISCUSSION

■ Where "a *defendant* seeks summary judgment, his declarations and evidence must either establish a complete defense to plaintiff's action or demonstrate an absence of an essential element of plaintiff's case. If defendant establishes the foregoing, and the plaintiff's declaration in reply does not show that there is a triable issue of fact with respect to that defense or that an essential element exists, the summary judgment should be granted. [Citation.]" (*Dolquist* v. *City of Bellflower* (1987) 196 Cal.App.3d 261, 266 [241 Cal.Rptr. 706], italics in original.)   ■   On review, the appellate court follows these same general principles except that it examines the facts presented to the trial judge on the summary judgment motion and independently determines their effect as a matter of law. The appellate court also conducts an independent review of the trial court's determination of questions of law. (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].)

■ In the case at bench, the granting of summary judgment was correct as a matter of law if the immunity provided by Government Code section 854.8 applies to defendant under the undisputed facts of this case. Section 854.8 provides that "a public entity is not liable for: . . . (2) [a]n injury to an inpatient of a mental institution." As used in section 854.8, the term "mental institution" means "any state hospital for the care and treatment of the mentally disordered or the mentally retarded, . . . or any county psychiatric hospital." (Gov. Code, § 854.2.) As used in section 854.2, the term "county psychiatric hospital" means "the hospital, ward, or facility provided by the county pursuant to the provisions of Section 7100 of the Welfare and Institutions Code." (Gov. Code, § 854.3.) Plaintiff does not dispute that Hawkins Center was a psychiatric facility within the meaning of Government Code section 854.3 and thus a mental institution under Government Code section 854.2. His sole contention is that no immunity was conferred

because plaintiff was never confined within Hawkins Center since no beds became available during the time he was at Drew Hospital. Similarly, plaintiff does not dispute that Hawkins Center was "a facility designated by the county and approved by the State Department of Mental Health as a facility for 72-hour treatment and evaluation." (Welf. & Inst. Code, § 5150.)

Appellate decisions have construed section 854.8 broadly. For example, in *Goff* v. *County of Los Angeles* (1967) 254 Cal.App.2d 45 [61 Cal.Rptr. 840], the Court of Appeal held that the defendant was immune from liability for injuries which the plaintiff had sustained after his release from a 10-day confinement for mental illness. At the time section 854.8 provided that a public entity was not liable for injury to any person "committed or admitted to a mental institution." (*Goff* v. *County of Los Angeles, supra,* at p. 49.) And, in *Guess* v. *State of California* (1979) 96 Cal.App.3d 111 [157 Cal.Rptr. 618], the Court of Appeal observed that section 854.8 "embodies an absolute, broad immunity prevailing over all other provisions of the Tort Claims Act." (*Id.* at p. 119.)

This district's decision in *Los Angeles County-U.S.C. Medical Center* v. *Superior Court (Pedregon)* (1984) 155 Cal.App.3d 454 [202 Cal.Rptr. 222] provides guidance concerning our interpretation of section 854.8. Although in *Pedregon* a different immunity provision (Gov. Code, § 856.2) was implicated, the issue of patient confinement was approximately the same. In *Pedregon,* the patient was at first placed within the approved 72-hour treatment and evaluation facility, which likewise was part of a larger hospital center. Then, while the patient was still under the 72-hour hold, she was transferred from the mental facility to the main hospital center for a "medical workup including X-rays and an electrocardiogram" because the mental facility itself did not have the equipment to perform the necessary tests. According to the complaint in *Pedregon,* the patient, while in the " 'unrestrained environment' " of the general hospital and as the result of this lack of restraint and supervision, suffered personal injuries. The plaintiffs argued that the immunity provided by section 856.2 to public entities for "an injury to . . . an escaping or escaped person who has been confined for mental illness or addiction" did not apply because the patient had not escaped from a " ' "licensed health care facility providing mental health care services." ' " (*Los Angeles County-U.S.C. Medical Center* v. *Superior Court (Pedregon),* *supra,* 155 Cal.App.3d 454, 463.) The court held that "The mere fact that at the precise moment [the patient] escaped she was in a location within the County Medical Center housing medical testing equipment and not 'in custody' in the psychiatric ward at the huge and complex county facility, does not a fortiori rule out escape immunity." (*Ibid.*)

The essence of the court's opinion was that "a person on a 72-hour psychiatric hold is 'confined' for purposes of section 856.2." (*Los Angeles*

*County-U.S.C. Medical Center* v. *Superior Court (Pedregon), supra,* 155 Cal.App.3d at p. 461.) Hence, if the mental patient who is transferred to the general hospital for medical tests remains a patient in a mental institution for immunity purposes, surely a patient ordered involuntarily confined in such a mental institution is likewise a patient of the mental hospital while waiting for a bed therein, whether or not the patient actually passes through its doors. This conclusion is especially true when the mental institution is part of a larger medical facility, and the patient is actually provided the same treatment and evaluation by the same members of the mental institution as would have been provided had the patient been in a bed inside the mental institution. We further note that it was the plaintiffs' position in *Pedregon* that the lack of restraint was the proximate cause of the patient's injury and that had the patient been physically confined within the walls of the mental facility itself, where restraints were part of the regimen, no injury would have occurred. In contrast, in the instant case, there is no allegation that the fact plaintiff here was not in a bed within the mental facility had anything to do with the type of treatment which he received. In fact, it appears that the treatment he received was identical to that he would have received had his bed been physically placed within Hawkins Center.

■ We further agree with defendant that a contrary interpretation of section 854.8 under the facts of this case would render the immunity essentially meaningless or at least severely retard its effectiveness. Psychiatrists and other officials treating mentally ill patients would be forced to make awkward decisions when the mental facilities are temporarily filled to capacity. A mental care expert, if immunity under section 854.8 were not applicable, might well decide not to confine the patient for treatment at all, a decision for which the public entity would be immune under Government Code section 856.[2] It would seem the practitioner would most likely select the choice which provides immunity and thus would not elect to confine the patient to an ancillary facility pending the availability of a bed in the mental institution. We do not believe the Legislature intended that public health care providers would be pushed to select options which are obviously not in the patient's or the public's best interests. We agree with defendant that the general purpose of immunizing public entities is to prevent conflict of interest situations where there is tension between the public entity's interest and those of the patient and public.

■ Finally, since these immunity provisions are to be construed broadly, we must likewise give a broad construction to the definitions of the entities involved. As indicated previously, a "mental institution," as used in section

---

[2]Government Code section 856 provides that a public entity is not liable "for any injury resulting from determining in accordance with any applicable enactment . . . [w]hether to confine a person for mental illness or addiction."

854.8 and defined in section 854.2, includes "any county psychiatric hospital," which is defined in section 854.3 as a "hospital, ward or facility provided by the county pursuant to the provisions of section 7100 of the Welfare and Institutions Code." Section 7100 provides: "The board of supervisors of each county *may* maintain *in* the county hospital or in any other hospital situated within or without the county or in any other psychiatric health facility situated within or without the county, suitable facilities and *nonhospital or hospital service* for the detention, supervision, care, and treatment of persons who are mentally disordered . . . ." (Italics added.) This statute gives a county discretion to maintain a psychiatric health facility within a county general hospital and to provide other, nonmedical services to patients and evidences a legislative intent that a "county psychiatric hospital" may be a general hospital which includes a mental facility within it. Hence, under section 854.8, the entire hospital was a "county psychiatric hospital" as to which immunity attached regarding the evaluation, care and treatment of mentally disordered persons confined pursuant to section 5150 of the Welfare and Institutions Code.

We thus conclude that the trial court properly determined that defendant's treatment of plaintiff, while plaintiff was confined pursuant to section 5150 of the Welfare and Institutions Code as a mentally disordered person who was a danger to himself, was subject to the immunity provisions of Government Code section 854.8.

DISPOSITION

The judgment is affirmed.

Ashby, Acting P. J., and Grignon, J., concurred.