[Civ. No. 3352.  Second Appellate District, Division One.—October 13, 1920.]

## FLOSSIE GOOD, Respondent, v. CITY OF SAN BERNARDINO, Appellant.

[1] MUNICIPAL CORPORATIONS — EMPLOYMENT OF HELP — MODE PRESCRIBED BY CHARTER.—Where a city charter places the control of its water department in a board of commissioners consisting of three persons and authorizes such board to employ and discharge at will such help as necessities of the water service may demand, but provides, "No claim for . . . service performed, shall be valid unless prior to . . . the rendition of the service, authority for the same had been given by the common council or some department of the city government having authority so to do. No member of the common council, or member of any department, and no city officer shall have power to create an indebtedness against the city, or to furnish the basis of a claim without said authority," the employment by one member of the board of water commissioners of a painter to go out to a particular pumping plant and do certain painting there is unauthorized.

[2] ID.—UNAUTHORIZED EMPLOYMENT OF AN ASSISTANT—STATUS OF LATTER AS LICENSEE.—Where the terms of the employment of such painter, conceding said employment to have been authorized by the city, were such that his rights and duties were only those of a workman personally employed to work by the day, and there was neither express nor implied authority to employ any other person to do the work or to assist in its performance, the employment by him of another would not have the effect of placing the latter in the position of a licensee of the city.

[3] ID.—ACTION FOR DAMAGES FOR DEATH—INVITATION OF DECEASED TO BE ON PREMISES—EVIDENCE—ACCEPTANCE OF RISK.—In this action against a city for damages on account of the death of plaintiff's husband resulting from his coming into contact with electric wires while painting the ceiling of a room in a pumping plant belonging to said city, the evidence showed that the deceased was not impliedly or at all invited to be on said premises for the purpose of doing any work or for any purpose; therefore, in going into the pumping plant as he did he took the risk of the premises as he found them.

APPEAL from a judgment of the Superior Court of Riverside County.  Hugh H. Craig, Judge.  Reversed.

The facts are stated in the opinion of the court.

William Guthrie, City Attorney, and Ralph E. Swing for Appellant.

Joseph Scott, A. G. Ritter and A. S. Maloney for Respondent.

CONREY, P. J.—This is an action wherein judgment has been rendered, pursuant to the verdict of a jury, against the defendant and in favor of the plaintiff Flossie Good for the recovery of damages on account of the death of Hugh S. Good. Such death was alleged to have been caused by negligence of the defendant. The defendant appeals from the judgment.

As shown by the amended complaint, this action was prosecuted by said Flossie Good, together with Mrs. George Milligan and Joseph H. Good. Flossie Good was the wife of said Hugh S. Good. Mrs. George Milligan was his mother and Joseph H. Good was his father. It was alleged that deceased left no children or grandchildren surviving him, and that plaintiffs were his only heirs at law. The plaintiffs brought the action as such heirs, as permitted under provisions of section 377 of the Code of Civil Procedure. Section 236 of the charter of the city of San Bernardino (Stats. 1905, p. 977) provides that "no claim or demand of any kind whatever shall be the basis or ground for an action or proceeding against the city for the collection or on account thereof, unless a verified claim in writing, clearly specifying the item or items constituting such claim or demand shall be filed with the city clerk, or with the board or commission having jurisdiction to allow or reject the same, at least thirty days prior to the commencement of such action or proceeding." It was shown by the evidence that more than thirty days prior to the commencement of this action the plaintiff Flossie Good filed with the city clerk a demand for the sum of ten thousand dollars, basing her said claim on the alleged negligence of the defendant resulting in the death of claimant's husband, the said Hugh S. Good, at the same time and place alleged in the complaint in this action. There being no evidence that any other claim or demand was ever filed or presented to the city, the defendant moved for a nonsuit and for the dismissal of the action, the motion being based upon the absence from the

claim received in evidence, of any reference to the plaintiffs Mrs. George Milligan and Joseph H. Good. There were other grounds of the motion not pertinent to the point now under consideration. Upon the ground stated, the court sustained the motion as to the plaintiffs Mrs. George Milligan and Joseph H. Good, but denied the same as to the plaintiff Flossie Good.

Appellant now claims that the right to maintain the action was joint and cannot be maintained by the widow alone; that when the action is not brought by the executor or administrator but brought by the heirs of the deceased, then all of the heirs must join as plaintiffs, or those refusing to join must be made defendants. (Code Civ. Proc., sec. 382.) It is argued that this is a substantial defense, for the reason that the rendition of a judgment in favor of the widow alone would not relieve the defendant from its liability, if any, to the mother and father of the deceased. But since the mother and father of the deceased joined with the widow as plaintiffs in this action, we cannot see that her situation in this respect is any different from that which would have existed if the mother and father had refused to join in this action and if the widow, for that reason, had made them defendants. Appellant, relying upon the rule that ''a right created in favor of several persons, is presumed to be joint, and not several'' (Civ. Code, sec. 1431), asserts that the plaintiff Flossie Good cannot maintain this action without first proving that the preliminary demand presented by her to the city was made not only on her own behalf but on behalf of the other heirs. Our attention is not directed to any decision directly determining this point. Taking into consideration the purposes of the charter provision, we are not prepared to say that a surviving heir who has presented a demand of the character here in question must lose her right of action merely because some other heir has neglected or refused to join in making such demand, or perhaps because it subsequently appears that there is another heir who was unknown at the time of the filing of her demand.

The complaint alleged that on the seventeenth day of August, 1917, while said Hugh S. Good was lawfully engaged in painting the interior of defendant's pump-house, with the knowledge and consent of said defendant city, and

while in the exercise of due care and caution, he came in contact with certain wires, etc., and was thereby injured by a powerful current of electricity then and there present in said wires, etc.; resulting in his death on the same day. The negligence of defendant was alleged to consist in improper construction and installation of the apparatus; in failure to place danger signals; in failure to guard or screen the same from contact; in failure to properly operate, inspect, and use said apparatus; in permitting said apparatus to become and remain in a defective condition by failure to properly inspect and protect the same; in permitting and allowing a high and dangerous current of electricity to pass through said wires, etc., without proper and sufficient insulation and protection; in failure to warn deceased of the dangerous character of said wires, etc.; in negligently failing to provide for said Hugh S. Good a safe and suitable place in which to work.

The provisions of the charter of the defendant placed the control of its water department in a board of water commissioners consisting of three members. The board is authorized "to employ and discharge at will such help as the necessities of the water service may demand." It is required that a record be kept of all proceedings of the board. Section 139 provides as follows: "No claim for commodities furnished, or service performed, shall be valid unless prior to furnishing such commodities, or the rendition of the service, authority for the same had been given by the common council or some department of the city government having authority so to do. No member of the common council, or member of any department, and no city officer shall have power to create an indebtedness against the city, or to furnish the basis of a claim without said authority." C. W. Smith was a member of the board of water commissioners. On or before the sixteenth day of August, Smith directed one Nick Codori, a painter, to go out to the Perris Hill pumping plant. The terms of employment are succinctly stated in Smith's testimony as follows: "I employed him to go out there and do such painting as we would require; he was to get four dollars a day and he furnish tools and brushes." This is consistent with the testimony of Codori, which is the only other evidence on the subject. Codori worked at the plant on August 16th and returned to work

on the following morning. On the morning of the 17th, Hugh S. Good came to the pumping plant, and, after some conversation between them concerning the work to be done and the amount of wages to be paid, Codori directed Good to go to work. Thereafter they worked together until about 9 o'clock, when the accident happened. There is no evidence that the board of water commissioners employed either Codori or Good, or ordered the work to be done. There is no evidence that any member of the board of water commissioners or any official of the city, other than Smith, knew that the work was being done or that Codori was employed or was doing any work for the city. There is no evidence that Smith knew that Good was at the pumping plant or had been employed by anyone to be there. The only evidence that any person connected in any way with the city had knowledge of Good's presence at the pumping plant is found in the testimony showing that Henry Maston, the engineer who was running the plant for the city, was there on the morning of the accident and knew that Good was there. But there is nothing in the nature of the employment of Maston which tends to show that he had any authority to represent the city in any dealings with either Codori or Good, or that he had anything to do with their presence there, other than that he did not prevent them from being there and did not interfere with the work which they were doing.

At the time of the accident Codori and Good were painting the ceiling of the room in which the electrical machinery was located. The ceiling was twelve feet above the floor. The wires through which the electricity came into the building, including all of the wiring alleged to have been unprotected and defectively insulated, came into the room near the ceiling and were not accessible from the floor. In order to reach the ceiling, Codori and Good had erected a platform by placing two boards at a height necessary for their purpose, resting one end of the boards upon a trestle and the other upon a transformer which was beneath the place where the wires in question were located. It was while standing on this platform that Good came in contact with the wires and received the injuries which caused his death.

[1] Under the circumstances above stated, the attempt of Smith to employ Codori was unauthorized. (*Zottman*

v. *San Francisco*, 20 Cal. 96, [81 Am. Dec. 96]; *Reams* v. *Cooley*, 171 Cal. 150, [Ann. Cas. 1917A, 1260, 152 Pac. 293]; *Foxen* v. *Santa Barbara*, 166 Cal. 77, [134 Pac. 1142]; *Gamewell Fire Alarm Tel. Co.* v. *City of Los Angeles*, 45 Cal. App. 149, [187 Pac. 163].) **[2]** Moreover, the terms of Codori's employment, even if it could be held to have been authorized by the city, were such that his rights and duties were only those of a workman personally employed to work by the day. There was neither express nor implied authority of Codori to employ any other person to do that work or to assist in its performance. Therefore, there is nothing shown in the transaction between Smith and Codori, or between Codori and Good, which would even have the effect to place Good in the position of a licensee on the defendant's premises. The only possible thread upon which one might hang the proposition that Good was there as a licensee consists in the fact that the engineer, who seems to have been in charge of the pumping plant, knew that Good was there and did not exclude him from the premises. But there is no evidence of negligence amounting to failure to perform any duty imposed by law upon the owner of such premises in favor of a licensee. The rule applicable in such cases was stated by this court in *Herold* v. *P. H. Mathews Paint House*, 39 Cal. App. 489, [179 Pac. 414, as follows: "We readily concede that a mere licensee cannot recover, where the injuries are caused solely by reason of the unsafe condition of the premises, and without any active or overt act of negligence committed against him by the occupant or owner of the premises. That rule, however, does not apply to a case where the licensee is upon the premises of the defendant and is injured by an overt act of negligence committed against him by the defendant." **[3]** In the present case, however, there was not any overt act of any character done by the defendant or any of its agents. In going into the pumping plant Hugh S. Good took the risks of the premises as he found them. If his injuries and death were caused by the unsafe condition of the premises, they were caused solely by such unsafe condition. The evidence, however, does not even tend to prove that the position and condition of the wires carrying the alleged high-power current of electricity were such that they were dangerous to a person entering the place in

an ordinary manner. The switches connecting those wires were placed at a height where they could not be reached from the floor. The uncontradicted evidence is that they were so placed for purposes of safety. By no stretch of the rules governing reasonable conduct can it be said that the defendant owed to the deceased any obligation to anticipate that he and Codori, or that either of them, would bring in materials for a platform and erect such platform by which they could climb up to the place of danger. It must be remembered that it was not shown, and respondent does not claim, that deceased was an employee of defendant city. Respondent's only claim is that deceased was employed upon defendant's premises engaged in a work for the benefit of defendant; that he was not a mere volunteer on the premises nor trespasser, but was there by implied invitation for the purpose of doing the work for which he had been hired by Nick Codori. Upon the facts and for the reasons already indicated, we are satisfied that deceased was not impliedly or at all invited to be on said premises for the purpose of doing any work or for any purpose.

The judgment is reversed.

Shaw, J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 9, 1920.

All the Justices concurred.