[Civ. No. 24114. First Dist., Div. One. Mar. 4, 1968.]

IMOGENE PETERSEN et al., Plaintiffs and Appellants, v. CITY OF VALLEJO et al., Defendants and Respondents.

*Reporter's Note: Now art. VI, § 13; see constitutional revision adopted November 8, 1966.

Werchick & Werchick, Jack H. Werchick, Arne Werchick and David P. Weaver, Jr., for Plaintiffs and Appellants.

Goodman & Herbert, Goodman, Herbert & Lucas, F. Richard Lucas, Harry S. Fenton, Robert F. Carlson and Marc Sandstrom for Defendants and Respondents.

SIMS, J.—Plaintiffs, the surviving widow of Alma A. Petersen, who seeks to recover damages for her own injuries, for the wrongful death of her husband and for loss of her car, and the surviving adult daughter, who, individually and as administratrix, seeks to recover damages for the wrongful death of her father, have appealed from judgments entered in favor of the defendants City of Vallejo and State of California, following an order of the court which granted the City's motion for summary judgment and the State's motions for summary judgment, and for dismissal and to preclude evidence.

The action arises out of an automobile collision which occurred on March 19, 1961. In addition to the City and the State, the driver of another vehicle, the County of Solano, and named and fictitious defendants who allegedly worked on the street were joined as defendants. It is asserted with respect to the City and the State that the street at the scene of the accident was maintained in a dangerous condition. This appeal involves a review of the contention of both the City and the State that the daughter failed to file a timely claim either individually or as administratrix, the City's further contention that there is no triable issue as to any of plaintiffs because it did not have possession or control of the street at the scene of the accident at the time it occurred, the State's contention that the action was properly dismissed as to the surviving widow because it was filed prior to the formal rejection of her claim, and the State's further claim that the trial court properly dismissed the complaint because the plaintiffs failed to comply with discovery orders.

The pertinent facts are set forth in the discussion which follows. It is concluded that the daughter's action, individually or as administratrix is barred by her failure to file a timely claim with either the City or the State; that the court properly granted the City summary judgment because it did not have possession or control of the street at the scene of the accident; that it was error to dismiss the widow's suit because it was prematurely filed; but that the action was properly dismissed as to the State because of the plaintiffs' failure to

comply with discovery orders. The judgments must be affirmed.

*I. Claim of Susan Santini, the adult daughter, as surviving child and administratrix*

Susan P. Santini is named individually, and as administratrix of Alma A. Petersen in the caption of the first amended complaint for damages, filed January 26, 1962, and made a part of the record on this appeal. A search of the allegations of the amended complaint reveals no reference to her appointment, qualifications or capacity to act. If she is properly before the court as administratrix, despite the lack of such allegations, the considerations which apply to her individually govern her rights as administratrix. It is alleged that she is an adult married person, and that she and her mother are the sole surviving heirs at law of her deceased father.

The eighth cause of action of this complaint purports to set forth a cause of action against the City of Vallejo for $250,000 for the wrongful death of Alma A. Petersen, on behalf of all the plaintiffs, widow, daughter and administratrix. The tenth cause of action contains similar allegations against the State of California. In neither of these causes of action is it alleged directly or by reference that a claim was filed with the respective public entity for the damages sought. However, in the second and fourth causes of action, in which the widow seeks damages for her own personal injuries against the City and the State, it is alleged that a claim was filed with each. The City by failure to deny these allegations in its answer filed April 25, 1962, admitted the filing of the claim and its disallowance. The State, in its answer filed March 6, 1964, admitted that a claim was filed May 18, 1961 and denied on September 19, 1961. It also expressly alleged that all plaintiffs' actions were barred by reason of failure to comply with the provisions of Government Code, section 644;[1] that plaintiff-daughter, both in her individual and representative capacity, failed to file a claim as provided by section 641[2] and section 644 of the Government Code; and that therefore her action in both capacities was barred.

[1]Government Code, section 644 [Stats. 1959, ch. 1715, § 2, p. 4118; repealed Stats. 1963, ch. 1715, § 6, p. 3395; see § 911.2, as adopted Stats. 1963, ch. 1715, §1, p. 3376; and § 945.6, as adopted Stats. 1963, ch. 1715, § 2, p. 3384, and amended Stats. 1965, ch. 653, § 19, p. 2015] provided: "A claim not arising under Sections 17000 to 17003, inclusive, of the Vehicle Code shall be presented to the board within two years after the claim first arose or accrued. An action on such a claim shall be brought within six months after the claim is rejected or disallowed in whole or in part."

[2]Government Code, section 641 [Stats. 1959, ch. 1715, § 2, p. 4118; repealed Stats. 1963, ch. 1715, § 6, p. 3395; see § 905.2 as adopted Stats.

The text of the claim of the widow has not been made a part of the record of the case on appeal, but it appears to be assumed that it included not only damages for her own personal injuries, but also her damages for the loss of her husband. Although the original complaint is not a part of the record, it was apparently filed on September 11, 1961, and served on the State on March 25, 1963. Appellants assert the complaint was served on the City in September 1961, the month it was filed.

According to the uncontradicted affidavits filed in support of the motions for summary judgment interposed by the State and the City, the daughter never filed any claim with the State, individually or in her representative capacity, and never filed any claim with the City prior to December 31, 1963. Under these circumstances, her action against the City is barred by the provisions of former sections 710 and 715[3] of the Government Code, and her action against the State is precluded by the provisions of former sections 641 and 644.[4] The court properly granted the motions for summary judgment. (*Gonzales* v. *Brennan* (1965) 238 Cal.App.2d 69, 76 [47 Cal.Rptr. 501]; *Ruffino* v. *City of Los Angeles* (1964) 226 Cal.App.2d 67, 70 [37 Cal.Rptr. 765]; *McGranahan* v. *Rio*

---

1963, ch. 1715, § 1, p. 3374, and § 945.4, as adopted Stats. 1963, ch. 1715, § 1, p. 3384, and amended Stats. 1965, ch. 653, § 17, p. 2014] provided: "Any person who has a claim against the State (1) on express contract, (2) for negligence, or (3) for the taking or damaging of private property for public use within the meaning of Section 14 of Article I of the Constitution, shall present the claim to the board in accordance with Section 621. If the claim is rejected or disallowed by the board, the claimant may bring an action against the State on the claim and prosecute it to final judgment, subject to the conditions prescribed by this article."

[3]Government Code, section 710 [Stats. 1959, ch. 1724, § 1, p. 4135, repealed Stats. 1963, ch. 1715, § 6, p. 3395; see § 910 as adopted Stats. 1963, ch. 1715, § 1, p. 3374; as amended Stats. 1965, ch. 653, § 1, p. 2010] provided: "No suit for money or damages may be brought against a local public entity on a cause of action for which this chapter requires a claim to be presented until a written claim therefor has been presented to the entity in conformity with the provisions of this article."

Government Code, section 715 [Stats. 1959, ch. 1724, § 1, p. 4136; see sections 901 and 911.2 as adopted Stats. 1963, ch. 1715, § 1, pp. 3373 and 3376] provided: "A claim relating to a cause of action for death or for physical injury to the person or to personal property or growing crops shall be presented as provided in Section 714 not later than the one hundredth day after the accrual of the cause of action. A claim relating to any other cause of action shall be presented as provided in Section 714 not later than one year after the accrual of the cause of action. For the purpose of computing the time limit prescribed by this section, the date of accrual of a cause of action to which a claim relates is the date upon which the cause of action accrued within the meaning of the applicable statute of limitations."

[4]See footnotes 1 and 2.

*Vista etc. School Dist.* (1964) 224 Cal.App.2d 624, 631 [36 Cal.Rptr. 798]; *Redwood* v. *State of California* (1960) 177 Cal.App.2d 501, 504 [2 Cal.Rptr. 174]; and see *Fidelity & Deposit Co.* v. *Claude Fisher Co.* (1958) 161 Cal.App.2d 431, 435-437 [327 P.2d 78]; and *Hall* v. *City of Los Angeles* (1941) 19 Cal.2d 198, 203 [120 P.2d 13].)

The claimant seeks to avoid the effect of the foregoing principles upon the theory that the filing by the widow ''was implicitly on behalf of all heirs who might be entitled to share in any eventual recovery'' and ''was sufficient so as to allow the State and City to fully exploit . . .'' investigation and settlement of the claim. (See Cal. Law Rev. Com., Recommendations Relating to Sovereign Immunity, 1008; and Van Alstyne, Cal. Gov. Tort Liability (Cal.Cont.Ed.Bar 1964) § 8.5, pp. 361-362.) However, it is generally recognized that the mere fact the governmental entity has some notice or knowledge of the accident and possible claim will not excuse failure of the claimant to file a timely claim as required by the statute. (See *McGranahan* v. *Rio Vista etc. School Dist., supra,* 224 Cal.App.2d 624, 629; and *Redwood* v. *State of California, supra,* 177 Cal.App.2d 501, 504.)

There is nothing in the record to indicate that the mother, as agent, filed a claim on behalf of her daughter. (See Gov. Code, § 910.2, and former § 711; and Van Alstyne, Cal. Gov. Tort Liability, *supra,* § 8.21, p. 377.) It is not alleged or claimed that the daughter was named as a claimant, or that any sum was claimed on her behalf. (See Gov. Code, former §§ 621, 641 and 711.)

Nor can this claimant rely upon the claim of her mother on the theory that there can be only one action, and therefore one claim for wrongful death. (Code Civ. Proc., § 377.) Whatever may have been said of the California law prior to the decision in *Cross* v. *Pacific Gas & Elec. Co.* (1964) 60 Cal.2d 690 [36 Cal.Rptr. 321, 388 P.2d 353],[5] that case established the following principles: ''Section 377 of the Code of Civil Procedure is a procedural statute establishing compulsory joinder and not a statute creating a joint cause of action. Otherwise, its provisions could not be waived. [Citations.] Although recovery under section 377 is in the form of a 'lump sum,' the amount is determined in accordance with

---

[5]*Cf.* Review of California law in *Nolan* v. *Transocean Air Lines* (1961) 365 U.S. 293, 295-296 [5 L.Ed.2d 571, 573, 81 S.Ct. 555] with *Nolan* v. *Transocean Air Lines* (2d Cir. 1961) 290 F.2d 904, 906-908; and see *J. A. Thompson & Sons, Inc.* v. *Superior Court* (1963) 215 Cal. App.2d 719, 721, fn. 2 [30 Cal.Rptr. 471].

the various heirs' separate interests in the deceased's life and the loss suffered by each by reason of the death, and no recovery can be had by an heir who did not sustain a loss. [Citation.] Accordingly, each heir should be regarded as having a personal and separate cause of action.'' (60 Cal.2d at p. 692. See also *Tammen* v. *County of San Diego* (1967) 66 Cal.2d 468, at pp. 474-479 and pp. 479-480 [58 Cal.Rptr. 249, 426 P.2d 753] ; *Changaris* v. *Marvel* (1964) 231 Cal.App.2d 308, 312 [41 Cal.Rptr. 774] ; and *Good* v. *City of San Bernardino* (1920) 49 Cal.App. 559, 560-561 [193 P. 790].)

▆ As against the City, the daughter further asserts an estoppel or waiver of the right to assert that there was a failure to file the claim. She relies upon *Rand* v. *Andreatta* (1964) 60 Cal.2d 846 [36 Cal.Rptr. 846, 389 P.2d 382], wherein it is stated: "Estoppel may be used in a proper case to excuse the late filing of claims against public entities or the filing of such claims in a defective form. [Citations.] Therefore, since late or defective notice is regarded as the equivalent of no notice [citations] estoppel may likewise be used to excuse no notice. [Citations.]'' (60 Cal.2d at pp. 849-850.) The matrix furnishes a form which is pertinent, but there is no substance with which to mold a figure which will throw a shadow on the clear base upon which the City predicates its case for nonliability. It is suggested that the failure of the City to raise the absence of a claim by the daughter when originally served with the summons and complaint in September 1961, and until July 25, 1966, when it made its motion for summary judgment, furnishes a basis for waiver or estoppel. *Spence* v. *State of California* (1961) 198 Cal.App.2d 332 [18 Cal.Rptr. 302] lends some support to the daughter's contention (see 198 Cal.App.2d at pp. 335-336). Nevertheless, as has been noted (*Gonzales* v. *Brennan* (1965) 238 Cal.App. 2d 69, 72-73 [47 Cal.Rptr. 501]) in *Spence* there were undenied allegations of compliance with the claim requirements for actions against employees of the State, and the answer of the State, which failed to raise the question, was filed at a time when there was still ample time remaining to comply with the claim statute.

In this case the 100 days specified in section 715 of the Government Code expired long before the date the action was filed. In *Tammen* v. *County of San Diego, supra,* 66 Cal.2d 468, the opinion states: ''. . . estoppel requires some affirmative representation or acts by the public agency or its representatives inducing reliance by the claimant. [Citations.]

At no time did [the claimant] allege that she was induced by any representations of the county to delay the filing of her claim or that she relied on action taken by the county on any other claims.'' (66 Cal.2d at pp. 480-481. See also *Gonzales* v. *Brennan, supra,* 238 Cal.App.2d 69, 75-76; *McGranahan* v. *Rio Vista etc. School Dist., supra,* 224 Cal.App.2d 624, 630-631; and *Fidelity & Deposit Co.* v. *Claude Fisher Co., supra,* 161 Cal.App.2d 431, 438-439.)

No cause has been shown for relieving the daughter from her failure to file a claim, and the court properly granted the State's and the City's motions for summary judgment.

*II. Claim of Imogene Petersen individually and as surviving spouse*

The widow's claim against the State admittedly was filed on May 18, 1961. The action was commenced September 11, 1961, eight days prior to the rejection of the claim. Insofar as is pertinent here, Government Code, section 644[6] provided: ''. . . An action on such claim shall be brought within six months *after* the claim is rejected or disallowed in part.'' (Italics added.) It has been generally considered that the foregoing provision prevented a claimant from bringing an action against the State until the claim was rejected or disallowed. (See Law Revision Com. (1963) Comments on Gov. Code, § 945.4; Van Alstyne, Cal. Gov. Tort Liability (Cont. Ed. Bar 1964) §§ 3.11 and 9.3, pp. 82 and 414; Van Alstyne, *Claims Against Public Entities,* 6 U.C.L.A. L.Rev. (1959), 205, 263.)[7]

In *Walton* v. *County of Kern* (1940) 39 Cal.App.2d 32 [102 P.2d 531] (hearing in S.Ct. denied July 1, 1940) the court considered statutory provisions, extant in 1937, which provided that the claimant ''may sue the county on the claim at any time within six months after the final action of the board [of supervisors],'' and gave that body 90 days within which to consider the merits of the claim. (See former Pol. Code, § 4078; and Gov. Code, former §§ 29714 and 29715.) A timely claim was filed February 1, 1938 for a death which occurred December 24, 1937. No action was ever taken with respect to rejecting or allowing the claim, but the complaint was filed on March 7, 1938. The county filed an answer in April 1938. A

---

[6] See footnote 1, *supra.*

[7] Similar considerations do not apply to the widow's claim against the City of Vallejo, because under Government Code, section 710 the only condition precedent to suit is the presentment of a claim. (See fn. 3, *supra;* and references in above text.)

year later in April 1939 the trial court granted the county's motion for judgment on the pleadings on the ground that the action was prematurely filed, and denied the plaintiff's motion to file a supplemental complaint which alleged that the claim had been rejected by the failure of the board to act upon it within 90 days after it was filed. The reviewing court observed, "The general rule is that where an action is prematurely brought, and the original complaint must fall, a supplemental complaint has no place as a pleading. [Citations.] Ordinarily, a plaintiff's cause of action must have arisen before the filing of the complaint and he may not recover in a cause of action arising after the suit is filed. [Citation.] In *Bank of Italy etc. Assn.* v. *Bentley*, 217 Cal. 644 [20 P.2d 940], the court said: 'Every complaint is predicated upon the theory that the plaintiff therein is entitled to judgment at the time of its filing.'" (39 Cal.App.2d at p. 34. To the same effect see *A. Teichert & Son, Inc.* v. *State of California* (1965) 238 Cal.App.2d 736, 744 [48 Cal.Rptr. 225] (overruled on other grounds in *E. H. Morrill Co.* v. *State of California* (1967) 65 Cal.2d 787 [56 Cal.Rptr. 479, 423 P.2d 551]) and *Chas. L. Harney, Inc.* v. *State of California* (1963) 217 Cal.App.2d 77, 101-102 [31 Cal.Rptr. 524].)

The extent to which *Walton* should be applied is open to question. In *Taylor* v. *City of Los Angeles* (1960) 180 Cal. App.2d 255 [4 Cal.Rptr. 209], the court observed that there was a distinction between claim provisions that required rejection before suit, and those which merely required the filing of a claim. In the latter situation, there is no need to await rejection before bringing an action (180 Cal.App.2d at p. 260). The court noted that there were factors limiting the effectiveness of *Walton* as a precedent (*id.*, p. 259, fn. 3). It held that the general state law giving a right of action for injuries resulting from the dangerous or defective condition of public property (Gov. Code, former §§ 53050, 53053) fully covered the situation, and precluded the application of the provisions of a City charter which purported to limit the right to sue "until a demand . . . has been . . . rejected in whole or in part." (*Id.*, pp. 258-262.)

The widow urges that, in similar vein, *Walton* should be limited to situations where the period in which the public entity may consider the claim is prescribed, and the failure to act within that period therefore may be considered a rejection. (*Cf.* the 90-day provision of former Pol. Code, § 4078, at issue in *Walton* [see Gov. Code, former §§ 29714 and 29714.1]

and the 45-day provision of present Gov. Code, § 912.4, with the absence of any such provision in claims against the state as outlined in former §§ 641-646 of the Gov. Code; [see also Gov. Code, former §§ 16043-16044].) She points out that under the law prior to 1963, the claimant against the State, whose claim was not acted on, could never tell when it might be deemed rejected, and that it would be unjust to make the claimant wait indefinitely for the State to act. It has been suggested that the failure to act on the claim may be controlled by mandamus. (See *Chas. L. Harney, Inc.* v. *State of California supra*, 217 Cal.App.2d at p. 102.) ▮▮▮ The existence of that remedy does not, however, determine whether the failure to resort to it should be fatal, or whether the claimant may proceed with his suit after waiting a reasonable time when no specific time has been prescribed for consideration of the claim. The difficulty of coordinating actions against multiple governmental entities, any one of which may be liable, suggests that the latter would be a desirable course. (See Van Alstyne, *op. cit.*, 6 U.C.L.A.L.Rev. at p. 264.)

The adoption of this principle need do no violence to the statutory mandate. If the action, filed prior to rejection, serves to deprive the public entity of sufficient time within which to investigate, consider, and act on the claim, a motion to abate, not dismiss, should lie. In the field of probate law it has been held: "The defense that suit was commenced before the presentation and rejection of claim 'is simply matter of abatement—a defense which is not favored, and must be made by plea, and in proper time, or it is waived.' (*Bemmerly* v. *Woodward* (1899) 124 Cal. 568, 574-575 [57 P. 561].) Here there is no occasion to consider whether the unfavored defense was waived, for it had ceased to exist at the time defendant sought to raise it." (*Radar* v. *Rogers* (1957) 49 Cal.2d 243, 250 [317 P.2d 17]. See also *Taylor* v. *City of Los Angeles, supra*, 180 Cal.App.2d 255, 263; but cf. *Chas. L. Harney, Inc.* v. *State of California, supra*, 217 Cal.App.2d 77, 93-95.) In *Radar* the opinion observes: "It has been said that 'The general rule is that where an action is prematurely brought, and the original complaint must fall, a supplemental complaint has no place as a pleading.' (*Walton* v. *County of Kern, supra*, 39 Cal.App.2d 32, 34. . . .) But the rule of the *Walton* case is by no means absolute and universal in application. The statement quoted was made in connection with a holding that a supplemental complaint cannot aid an original complaint

which was filed before a cause of action had arisen. Here there was a cause of action when the original complaint was filed. That cause of action accrued when the accident happened. Every fact essential to state a cause of action, at least in the absence of a plea in abatement is well pleaded." (*Id.*, p. 247.)

■ The reasons expressed in *Radar* are pertinent and most persuasive. Here, as in that case, the plaintiffs "believed they had a cause of action and in the exercise of diligence they wished to have their complaint on file before any question as to the running of an applicable statute of limitations could arise." (*Id.*, at p. 248.) "The substantial rights of the [State] are not affected by the procedure followed by plaintiffs. The [State] had ample opportunity, before the filing of the amended complaints, to approve plaintiffs' claim." (*Id.* p. 249.) ■ The court noted that the object of the claim statute and the requirements of a rejection of the claim prior to suit were to save the expense of useless suits. It applied the maxim, "When the reason of a rule ceases, so should the rule itself." (Civ. Code, § 3510.)

*Radar* suggests a distinction between a claim against a public entity, where no cause of action exists until rejection, and a claim against an estate on an existing cause of action which antedated the death of the obligor. ■ However, since the decision in *Radar*, it has been recognized that the Legislature, in providing the manner in which a public entity may be sued, does not create a cause of action, but merely prescribes the manner in which it may be asserted. (See *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211, 216-218 [11 Cal. Rptr. 89, 359 P.2d 457]; and see Gov. Code, §§ 815-818.3 and §§ 944 and 945.) The prerequisite of rejection may, therefore, be considered more of a procedural than a substantive requirement.

There is nothing to compel a contrary conclusion in the other cases cited in support of the proposition that a suit filed prior to the rejection of the claim should be dismissed. In *A. Teichert & Son, Inc., supra,* the court stated: "[T]he question is whether plaintiff's claim had arisen or accrued by September 21, 1961." (238 Cal.App.2d at p. 744.) The court's statement, "Actually, the contractor had no right to sue until the State Board of Control had acted" (*id.*), had nothing to do with the case because the claim in fact had been rejected and action was timely filed thereafter. The sole issue was whether the claim was barred by the general statute of limita-

tions when it was filed. The court concluded it was not because the prior pendency of administrative proceedings prevented the running of the statutory time (*id.*, pp. 744-751). In *Chas. L. Harney, Inc., supra,* the principal contention was that the action was predicated upon a claim which had been rejected more than six months previously (Gov. Code, § 644). (217 Cal.App.2d at p. 85.) The court found that an alleged second claim, which was denied consideration because it was identical with the first claim, was in fact identical, and could not serve as the basis for an action filed within six months of the time consideration was denied (*id.*, pp. 85-93 and 95-101). The opinion did further observe that "the commencement of any action [on the second claim, which was refused consideration] prior to rejection is premature." (*Id.*, p. 102.) Nevertheless, it did not pass on the question of whether the proceedings could be amended to show such rejection, if it in fact occurred, or the question of whether abatement or dismissal was the proper remedy. The statement in *Wiersma* v. *City of Long Beach* (1940) 41 Cal.App.2d 8 [106 P.2d 45], that a supplemental complaint will not serve to relieve the failure to allege presentation of a claim in the original complaint, refers not to the question of rejection, but to the fact that no claim was filed at all until the summons and complaint were served five months after they were filed. (*Id.*, p. 12.)

The following is pertinent, "While none of the foregoing decisions gives precise guidance to us in the present case, that does not automatically bar recovery. 'Equity does not wait upon precedent which exactly squares with the facts in controversy, but will assert itself in those situations where right and justice would be defeated but for its intervention.' (*Farrell* v. *County of Placer* (1944) *supra,* 23 Cal.2d 624, 628 [145 P.2d 570, 153 A.L.R. 323].)" (*Satterfield* v. *Garmire* (1967) 65 Cal.2d 638, 645 [56 Cal.Rptr. 102, 422 P.2d 990].)

It is, therefore, concluded that where, as here, no time is specified within which the public entity shall act on the claim, the claimant, at his election, may bring suit after the passage of a reasonable time. In the absence of a motion to abate, the action should proceed as though the claim were rejected, or, if such a motion is made to permit action on the claim, or if, as in this case, such action is taken without such motion, the proceedings may be amended to show the true facts.

The widow also contended that the State was estopped to raise the question of the prematurity of the

action. (See *Taylor* v. *City of Los Angeles, supra,* 180 Cal. App.2d 255, 262-264.) No basis is found for an estoppel. The State was not served until March 25, 1963, and its answer, raising the defense of prematurity of suit was not filed until March 6, 1964. Here, unlike *Taylor,* the answer did not indicate the claim was considered rejected, nor did the mere inaction of the State, between the time it was served and the time it answered, give rise to a waiver or estoppel. (See *Tammen* v. *County of San Diego, supra,* 66 Cal.2d 468, 481, and other cases cited, *supra,* in connection with the discussion of the daughter's claim of estoppel.) Nevertheless, for the reasons set forth above, it was error to grant the State's motion for summary judgment against the widow on the ground that the action was commenced prematurely.

*III. Liability of the City*

The first amended complaint alleges that the place where the accident occurred was on a public highway "located in the City of Vallejo." It is further alleged: "That plaintiffs cannot reasonably determine at this time, and do not know which defendant had control, duty of maintenance, or otherwise was responsible for said highways or roads and therefore is in doubt as to which said defendant or group of said defendants are liable hereunder, and therefore joins said defendants in order to determine liability of all or some of said defendants.

"That plaintiff is informed and believes, and based on such information and belief, alleges that at said time and place defendant City of Vallejo was in control of said Springs Road overpass. Said defendant, or its employees, contractors, departments, subdivisions. commissions, or other agencies so negligently and carelessly maintained the white guide lines, other traffic controls and said highway, or so allowed them to be so maintained, that the said guide lines were not visible, were misleading, were inadequate and were otherwise dangerous to users of said highway as was said highway in general." Similar allegations were made against the State of California, and other named defendants. ■■■ The City denied the allegations which purported to implicate it, and moved for summary judgment on the ground (in addition to that discussed in connection with the daughter's claim) that it "did not possess, maintain or control the area in which this accident occurred, and was not responsible for any alleged defective condition in said area."

■■■ The City's motion is supported by the declaration of its Director of Public Works and City Engineer. He alleges

that the State acquired possession and control of the scene of the accident by virtue of a freeway agreement entered into with the City in 1956; that the State constructed the overpass and relocated the street, and was in possession and control of the street on the date of the accident; that "any and all traffic control markings on Springs Road in the area that the collision took place were placed there and maintained by the State of California, its agents or contractors, and not by the City of Vallejo, or anyone acting on its behalf"; and that the maintenance and control of the area did not revert to the City of Vallejo until it was relinquished by the State on November 22, 1961, some eight months after the accident. Copies of the freeway agreement and documents relating to relinquishment were filed with the declaration.

In opposition to the City's motion the plaintiffs filed a declaration setting forth the following: "That Defendant State of California in answer to plaintiff's earlier interrogatory No. 12, responded as follows: 'The land at the location of the accident is owned by the City of Vallejo and all cities have a duty to maintain their own city streets.' That the declarant is informed and believes and therefore alleges that the City does own the property and is charged with the maintenance of such, and such is the case despite any agreement between the City and the State of California; That a further basis for the denial of this motion is that discovery is still in process at this time and has not been completed." There was also before the court a document entitled, "Defendant State of California's Answers to Further Interrogatories," in which the following statement appears: "(1) Our records indicate that on March 18, 1960, a crew under the direction of E. J. Dillon striped the service roads and overpass on this project at the request of the City of Vallejo's traffic engineer. Our records, however, do not indicate specifically what portion of the overcrossing was striped."

Plaintiffs further rely on the clause of the freeway agreement under which the City agreed to accept control and maintenance of certain streets and structures on notice to the City Engineer from the State that the work had been completed.[8]

---

[8]These provisions read: "3. The City will accept control and maintenance over each of the relocated or reconstructed city streets and the frontage roads on notice to the City Engineer from the State that the work herein provided for on such roads or streets has been completed, except as to any portion thereof which is adopted by the State as a part of the freeway proper.

They also assert that the exhibits concerning relinquishment indicate that the State gave the City a 90-day notice of relinquishment dated October 24, 1960, and that by virtue of that notice the streets reverted to the City on January 24, 1961, prior to the accident.

The trial court concluded, ''as respects both plaintiffs it has been made to appear conclusively in support of the motion that on March 19th, 1961, the date on which the accident occurred which occasioned this law suit, defendant City of Vallejo had no right of possession or control, or actual possession or control, of the area of Springs Road whereon the subject accident occurred nor had it, prior to such date, ever caused directional indications or divisional markings to be placed on or about said area of the roadway.''

■■ ''A summary judgment will stand if the movant's affidavits state facts sufficient to sustain a judgment and the counteraffidavits do not proffer competent and sufficient evidence to present a triable issue of fact [citation]. ■■ The procedure is drastic and should be used with caution in order that it may not become a substitute for existing methods of determination of issues of fact [citation]. ■■ Affidavits of the moving party must be strictly construed and those of his opponent liberally construed. The opposing affidavit must be accepted as true, and need not be composed wholly of strictly evidentiary facts [citation]. ■■ The issue to be determined by the trial court in consideration of a motion for summary judgment is whether or not any facts have been presented which give rise to a triable issue or defense, and not to pass upon or determine the true facts in the case [citation].

■■ Any doubts are to be resolved against the moving party [citation]. The facts in the affidavits shall be set forth with particularity. ■■ The movant's affidavit must state all of the requisite evidentiary facts and not merely the ultimate facts or conclusions of law or conclusions of fact [citation].'' (*McGranahan* v. *Rio Vista etc. School Dist., supra*, 224 Cal.App.2d 624, 627; and see *Arnold* v. *Hibernia Sav. & Loan Soc.* (1944) 23 Cal.2d 741, 744-745 [146 P.2d 684]; *Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553, 555-556

---

''4. The City will accept control and maintenance over designated sections of the interchange or separation structures constructed under this Agreement on notice to the City Engineer from the State that the work herein provided for on such structures has been completed, except as to any portion thereof which is adopted by the State as a part of the freeway proper.''

[122 P.2d 264]; and *Dreyfuss* v. *Burton* (1966) 246 Cal.App. 2d 629, 631-632 [54 Cal.Rptr. 843].)

 Tested by the above rules there is no evidence to contradict the unequivocal statements filed on behalf of the City. The answers of one party, the State, elicited in response to interrogatories propounded to it by the plaintiff, cannot be used as evidence against a third party, the City. (*Associates Discount Corp.* v. *Tobb Co.* (1966) 241 Cal.App. 2d 541, 550-552 [50 Cal.Rptr. 738].) Even if it be assumed that the statements were submitted in proper form, they do not raise an issue. The State answer, first quoted, purports to speak in the present tense and indicates that the land was owned by the City at the time the answer was made. The failure to set forth the question leaves the statement bereft of persuasiveness on the issue in dispute.[9] The second State answer upon which plaintiffs rely reveals that the State did mark the streets. The fact that the City's traffic engineer requested the work to be done on the service roads and overpass does not indicate what portion, if any, of those thoroughfares was subject to control and maintenance by the City, so as to controvert the declaration of the City Engineer.

Neither the terms of the freeway agreement nor the notice, apparently given in connection with the proceedings for relinquishment, raise an issue of fact. There are no allegations to show whether or not the street in question was embraced as part of the freeway proper, nor is there anything to show that notice was given to the City Engineer (see fn. 8, *supra*). His statements of nonreacceptance at the time of the accident stand unchallenged. Reference to the provisions of section 73 of the Streets and Highways Code indicates that there is no automatic relinquishment at the end of the 90-day notice period prescribed by that section, but that ". . . relinquishment shall be by resolution."

 . The City cannot be held for the defective condition of property which it did not possess or control. (*Gillespie* v. *City of Los Angeles* (1950) 36 Cal.2d 553, 555-558 [225 P.2d 522]; *Donnachie* v. *East Bay Regional Park Dist.* (1963) 217 Cal.App.2d 172, 174-176 [31 Cal.Rptr. 611]; and see *Schwerdtfeger* v. *State of California* (1957) 148 Cal.App.2d 335, 345

[9]According to the City the question was as follows: "Who owns the land and who is responsible for the traffic markings on Springs Road, as described in Interrogatory No. 11?" (Interrogatory No. 11 was as follows: "Have you or your agents or employees ever painted any traffic markings, including lane markings, on Springs Road, where this accident occurred, within one block either way of Humboldt?")

[306 P.2d 960] ; and present Gov. Code, § 830, subd. (c).) The trial court properly granted the City's motion for summary judgment as to all of the plaintiffs. (*Donnachie* v. *East Bay Regional Park Dist.*, *supra*, at p. 176.)

*IV. Propriety of dismissal as a sanction*

The rejection of the contention that the action of the surviving widow against the State should be dismissed because it was filed prematurely makes it necessary to consider the propriety of the court's order granting the State's motion to dismiss for failure of the plaintiffs to comply with an order of the court pertaining to discovery. (Code Civ. Proc., § 2034, subd. (b) (2) (iii).) [10]

---

[10]Code of Civil Procedure, section 2034 provides in pertinent part: "(a) . . . Upon the refusal of a party to answer any interrogatory submitted under Section 2030 of this code, the proponent of the question may on like notice make like application for such an order ["compelling an answer"]. . . . If the motion is granted and if the court finds that the refusal was without substantial justification the court may require the refusing party or deponent and the party or attorney advising the refusal or either of them to pay to the examining party the amount of the reasonable expenses incurred in obtaining the order, including reasonable attorney's fees. . . .

"(b) (1) The court may punish as a contempt . . . (iii) the refusal of any person to obey any order made by the court under subdivision (a) of this section.

"(2) If any party or person for whose immediate benefit the action or proceeding is prosecuted or defended, or an officer, director, superintendent, member, agent, employee or managing agent of any such party or person refuses to obey an order made under subdivision (a) of this section, . . . the court may make such orders in regard to the refusal as are just, and among others the following:

"(i) An order that the matters regarding which the questions were asked, . . . or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

"(ii) An order refusing to allow the disobedient party to support . . . designated claims . . . or prohibiting him from introducing in evidence . . . items of testimony . . . ;

"(iii) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

"(iv) An order requiring the disobedient party or the attorney advising such disobedience to pay to the party obtaining an order under this section the reasonable expenses incurred in obtaining the order, including reasonable attorney's fees;

" . . . . . . . . . .
"(d) . . . if a party . . . willfully fails to serve and file* answers to interrogatories submitted under Section 2030 of this code, after proper service of such interrogatories, the court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party, or impose such other penalties of a lesser nature as the court may deem just, and may order that party or his attorney to pay to the moving party the reasonable expenses in making such motion, including reasonable attorney's fees." (*Added Stats. 1965, ch. 126, § 1, p. 1074.)

The order was the culmination of numerous proceedings taken by the State to determine the factual basis for plaintiffs' allegations that the State maintained the street at the scene of the accident in a dangerous condition. Although all of the proceedings have not been made a part of the record on appeal, the following are referred to in the record, and have been verified from the files of the trial court.

January 26, 1962—After the City had interposed its demurrer to the original complaint, a first amended complaint for damages was filed. This complaint contained allegations against the State similar to those set forth against the City, as quoted in part III, *supra.*

March 25, 1963—The State was served with summons and presumably a copy of the first amended complaint.

July 24, 1963—The court sustained the State's special demurrer to the first amended complaint.

August 13, 1963—The plaintiffs filed their second amendment to complaint which alleged, in more detail, the condition of the guidelines and the road which allegedly contributed to the accident.

December 12, 1963—The court sustained the State's special demurrer to the complaint as supplemented by the foregoing amendment.

January 2, 1964—The plaintiffs filed their third amendment to complaint, in which they purported to elaborate on the nature of the dangerous condition.[11]

March 5, 1964—The State filed an answer to the first amended complaint as last amended, after its special demurrer to the third amendment was overruled.

March 23, 1964—The State filed 175 interrogatories which had been served upon plaintiffs. These included the following question: "169. State in detail the factual basis for your alle-

---

[11]This amendment alleges on information and belief "that the above-described area was in a defective or dangerous condition in that the white guide lines on the highway were so placed that they created a substantial risk of injury when the property was used with due care in a reasonably forseeable [*sic*] manner. This condition included the leaving by said employees and other persons, in the course and scope of their employment, instead of removing or blanking out, of certain white guide lines on the highway after the highway had been altered. These guide lines would make it appear to a person, such as plaintiff IMOGENE PETERSEN'S deceased husband, travelling along such area that he was driving in the proper lane when, in fact, the lane he was in would direct him into the opposite lanes of traffic. In addition, no traffic control devices or warnings were installed or erected to warn drivers, such as plaintiff IMOGENE PETERSEN'S deceased husband, of such a condition that would not be reasonably apparent to, and would not have been anticipated by, such a person using due care. . . ."

gation that the State of California 'negligently and carelessly controlled, maintained, repaired and constructed said Springs Road and Overpass.' ''

May 29, 1964—Answers subscribed by plaintiffs' attorney were filed. Question 169 and numerous other questions were not answered other than by a comment, ''all the above questions not answered were objected to as being irrelevant.''

June 30, 1964—In response to the State's motion, the plaintiffs were ordered to individually answer all of the interrogatories under oath. A ruling was reserved on the defendant's motion for expenses and attorney's fees under section 2034, subdivision (d) of the Code of Civil Procedure.

November 5, 1964—Further answers to interrogatories, subscribed by plaintiff widow were filed. These interrogatories included the following answer: ''169. State of California was negligent in its supervision of employees and in retaining said employees to the extent that said Springs Road and Overpass was allowed to become and was a hazard to people using it for its intended purpose, to-wit: as a thoroughfare for automobiles.''

January 8, 1965—In response to the State's second motion the court ordered plaintiffs to further answer question 169, among others, and reserved the question of attorney's fees and costs.

July 6, 1965—The plaintiff widow filed further answers in which she stated: ''169. Plaintiff does not wish by the answer of this question to any way limit itself in its introduction of evidence at the time of the trial, which evidence may not be known or readily available to this plaintiff at this time. The defendants through their negligence and carelessness allowed certain road markings and directional guides to remain on said roadway and said markings and roadguide were hazardous to people operating their automobiles under the conditions which prevailed on the evening in which plaintiff's decedent died and plaintiff sustained her severe bodily injuries.''

August 6, 1965—In response to the State's third motion, the court expressly ordered: ''1. . . . 2. Plaintiff shall under oath and in further response to Question 169 set forth in detail the description and location of the 'certain road markings and directional guides' referred to in her answer to Interrogatory 169 dated June 5, 1965.[12] 3. The defendant State of California's motion for attorneys' fees is denied. However, if plaintiff does not furnish the further answer to

---

12An obvious clerical error. The answers before the court were those dated June 30, 1965 and filed July 6, 1965.

Question 169 as required above within 30 days from the date of this order, plaintiff shall be precluded from offering evidence upon the theory of liability set forth in her June 5, 1965 [see fn. 12, *supra*] response to Question 169."

September 24, 1965—The widow filed her further answers dated September 16, 1965, and verified September 20, 1965. She stated: "169. In conjunction with the answers previously filed, the State, either during the time of construction or repairs of this roadway, allowed two divider strippings to remain on said roadway. These two strippings would and did create confusion as to which direction the roadway led."

April 1, 1966—A pretrial conference was held. The State in its pre-trial statement, dated March 30, 1966 and filed April 4, 1966, reserved the objections to the claims of the widow and daughter which have been reviewed in this opinion, and also asserted, "The plaintiffs are precluded from presenting any evidence against the State of California on the alleged dangerous condition as a result of their failure to comply with the Minute Order of Judge Kongsgaard entered on August 2, 1965, and his formal Order on August 4, 1965."

April 8, 1966—The pretrial order, dated April 4, 1966 was filed. It granted the State and City leave to advance by motion their special claims for dismissal or other relief.

April 8, 1966—The State filed its motion to dismiss and preclude evidence which was granted by the court on June 16, 1966, and resulted in the judgment of dismissal, signed and filed June 28, 1966, from which this appeal is taken.

In opposition to the motion to dismiss, plaintiffs filed the declaration of their attorney in which it is not denied that plaintiffs were represented in court when the court's ruling was pronounced. It is alleged, however, that no formal order was served on plaintiffs until a letter, dated September 8, 1965, was received September 10, 1965, following inquiry of counsel for the State. On this appeal plaintiffs contend that the granting of the State's motion to dismiss was an abuse of discretion because it inflicted punishment rather than furthered the discovery process, and because it denied plaintiffs due process of law. They assert there was no "refusal" within the contemplation of the provisions of section 2034 of the Code of Civil Procedure (see fn. 10, *supra*), and that any delay in filing the last answer was due to mistake and inadvertence predicated upon the State's failure to serve them with a formal order.

The State, in support of the order granting the motion and the ensuing judgment, relies not only upon the plaintiffs'

failure to answer within the time prescribed by the court, but also upon the plaintiffs' diffidence, after the extensive proceedings taken in this case, to ultimately comply with the trial court's order to "set forth in detail the description and location" of the road markings and guidelines.

The State had the unquestionable right to determine the factual basis for the plaintiffs' claim of negligence. (*Singer* v. *Superior Court* (1960) 54 Cal.2d 318, 323-324 [5 Cal.Rptr. 697, 353 P.2d 305] [cf. question at p. 321 with question 169 quoted, *supra*]; and see *Dahlquist* v. *State of California* (1966) 243 Cal.App.2d 208, 212-213 [52 Cal.Rptr. 324].)[13]

"[A party] is entitled to demand answers to his interrogatories as a matter of right unless [his adversary] has stated a valid objection thereto [citation]; . . ." (*Welgoss* v. *End* (1967) 252 Cal.App.2d 982, 991 [61 Cal.Rptr. 52].) Where no answers are filed the court has power and authority under the provisions of subdivision (d) of section 2034 of the Code of Civil Procedure to dismiss an action as a means of enforcing discovery rules. (*Id.*, at p. 986, and see cases there cited.) It is recognized that the sanctions provided in subdivision (b)(2) of section 2034 apply to the refusal to obey in an order made under section 2030 requiring further response to interrogatories. (*Fairfield* v. *Superior Court* (1966) 246 Cal.App.2d 113, 120 [54 Cal.Rptr. 721].) In *Fred Howland Co.* v. *Superior Court* (1966) 244 Cal.App.2d 605 [53 Cal.Rptr. 341], the court stated: "There is no question of the power of the respondent court to apply the ultimate sanction of default against a litigant who persists in an outright refusal to comply with his discovery obligations." (244 Cal.App.2d at p. 612.)

The plaintiffs have the burden of showing an abuse of the trial court's discretion. (*Weinkauf* v. *Superior Court* (1966) 64 Cal.2d 662, 665 [51 Cal.Rptr. 100, 414 P.2d 36]; and see *Rosen* v. *Superior Court* (1966) 244 Cal.App.2d 586, 594 [53 Cal.Rptr. 347]; and *Crummer* v. *Beeler* (1960) 185 Cal.App.2d 851, 858 [8 Cal.Rptr. 698].)

---

[13]The description and location of the road markings and directional guides, which the court ordered the plaintiffs to disclose, were material and relevant on the issue of whether the State owned, maintained or controlled the area in which they existed (see *Donnachie* v. *East Bay Regional Park Dist.* (1963) 217 Cal.App.2d 172, 173 [31 Cal.Rptr. 611]), and also on the issue of whether the condition was such as subjected the State to liability under the provisions of the California Tort Claims Act of 1963 (see Gov. Code, §§ 815 and 830-835.4) which are applicable to an accident occurring on March 19, 1961. (*Loop* v. *State of California* (1966) 240 Cal.App.2d 591, 599-600 [49 Cal.Rptr. 909].)

The applicable principles have been set forth in *Caryl Richards, Inc.* v. *Superior Court* (1961) 188 Cal.App.2d 300 [10 Cal.Rptr. 377], as follows: ''One of the principal purposes of the Discovery Act (Code Civ. Proc., §§ 2016-2035) is to enable a party to obtain evidence in the control of his adversary in order to further the efficient, economical disposition of cases according to right and justice *on the merits.* (41 Mich.L.Rev. 205; 50 Yale Law Journal 711; *Pettie* v. *Superior Court,* 178 Cal.App.2d 680, 689 [3 Cal.Rptr. 267].) Its purpose is not 'to provide a weapon for punishment, forfeiture and the avoidance of a trial on the merits.' (*Crummer* v. *Beeler,* 185 Cal.App.2d 851, 858 [8 Cal.Rptr. 698]; *Mitchell* v. *Johnson,* 274 F.2d 394.)

''The statute is to be liberally interpreted so that it may accomplish its purpose. The trial court has a wide discretion in granting discovery and by the provisions of section 2034 of the Code of Civil Procedure it is granted broad discretionary powers to enforce its orders but its powers are not unlimited.

''Paragraph (b) (2) of section 2034, Code of Civil Procedure, and subparagraphs (i), (ii), (iii) and (iv) thereof, under which the court acted here, set forth the power of the court to impose sanctions and the sanctions which it may impose for violation of its orders but they may not be interpreted as granting to the court the power to arbitrarily select the sanction it will impose.

''The sanctions the court may impose are such as are suitable and necessary to enable the party seeking discovery to obtain the objects of the discovery he seeks but the court may not impose sanctions which are designed not to accomplish the objects of the discovery but to impose punishment. (*Crummer* v. *Beeler, supra,* p. 858; *Mitchell* v. *Johnson, supra,* p. 401; *Hovey* v. *Elliott,* 167 U.S. 409, 414 [42 L.Ed. 215, 220, 17 S.Ct. 841]; *Hammond Packing Co.* v. *Arkansas,* 212 U.S. 322 [53 L.Ed. 530, 29 S.Ct. 370].

''What we have just said is made clear by the provisions of the statute. It provides in substance that if a party refuses to obey an order requiring discovery, such as that made by the court here, 'the court may make such orders in regard to the refusal *as are just'* (emphasis added) and it then recites the sanctions that may be imposed. The first sanction specified is an order that the matter or fact concerning which an interrogatory is proposed shall be taken as established for the purposes of the action in accordance with the claim of the party obtaining the order; the second sanction is an order which

prohibits the disobedient party from opposing a designated claim; the third sanction is an order striking out a pleading and rendering a judgment by default against the disobedient party." (188 Cal.App.2d at pp. 303-304. See also *Welgoss* v. *End, supra,* 252 Cal.App.2d 982, 992; *Fairfield* v. *Superior Court, supra,* 246 Cal.App.2d 113, 120; and *Fred Howland Co.* v. *Superior Court, supra,* 244 Cal.App.2d 605, 610.)

If there were merely a 21-day delay in complying with the court's order it would be an abuse of discretion to dismiss the plaintiffs' action. In *Fred Howland Co.* v. *Superior Court, supra,* the court concluded: "When Mr. Hunt again appeared before the court on April 22 he had tendered his answers in proper form and had supplied the court with another declaration explaining more fully the difficulties which had been involved. Under these circumstances, to strike out the answer and enter a default, and then refuse to reconsider upon the showing made on April 22, was to inflict unnecessary and excessive punishment upon one litigant and to confer a windfall upon another litigant and his attorneys. The wrong done, at most, was to delay the preparation of the case and cause some additional work for counsel—matters for which a reasonable monetary award would readily compensate." (244 Cal.App.2d at pp. 611-612. See also *Welgoss* v. *End, supra,* 252 Cal.App.2d 982, 991-992; *Fairfield* v. *Superior Court, supra,* 246 Cal.App.2d 113, 120-122; and *Crummer* v. *Beeler, supra,* 185 Cal.App.2d 857, 858-860.) On the other hand, were no answer at all filed, the trial court's dismissal of the action could be upheld. (*Frates* v. *Treder* (1967) 249 Cal.App.2d 199, 205-206 [57 Cal.Rptr. 383]. See also *Rosen* v. *Superior Court, supra,* 244 Cal.App.2d 586, 591; *Bank of America* v. *Baker* (1965) 238 Cal.App.2d 778, 779 [48 Cal.Rptr. 165]; and *Unger* v. *Los Angeles Transit Lines* (1960) 180 Cal.App.2d 172, 180-186 [4 Cal.Rptr. 370, 5 Cal. Rptr. 71] [but cf. with *Unger, Fairfield* v. *Superior Court, supra,* 246 Cal.App.2d 113, 120-122].)

In *Caryl Richards, Inc., supra,* as in this case, there were several proceedings to secure an answer which was sufficient to enable the interrogator to properly prepare for trial. An order was made granting attorney fees, but denying more serious sanctions if proper answer was made within a designated time. The ensuing answers were found insufficient and the court made an order striking the defendant's answer and entering its default. (188 Cal.App.2d at pp. 302-303.) The court in granting a writ of mandamus to vacate the default

and reinstate the answer concluded: "It seems to us self-evident that an order imposing as a sanction that, for the purposes of the trial the fact that petitioner's product was such as might cause injury to the human eye, would have accomplished the full purpose of discovery for it would have given real parties in interest the benefit of everything which they might have had from the discovery which they sought. It seems to us further evident that the order that the court made which deprived petitioner of any right to defend the action upon its merits was one designed not to accomplish the purposes of discovery but designed to punish petitioner for its failure to disclose in detail its secret process." (*Id.*, at p. 305.) The court also observed that the prior conditional order implied that the interrogator, upon the failure to receive a sufficient answer, was entitled to an order establishing the facts in accordance with his contention.

In this case the last preceding order of the court provided "if plaintiff does not furnish the further answer to Question 169 as required above within 30 days from the date of this order, plaintiff shall be precluded from offering evidence upon the theory of liability set forth" in her prior answers. The court on the second motion could well find that the tardy answer was insufficient to comply with its prior order which required the plaintiffs to "set forth in detail the description and location" of the markings and guidelines. (See in addition to *Caryl Richards, Inc., supra, Welgoss v. End, supra,* 252 Cal.App.2d at pp. 990-991 and 993, where dilatory tactics and evasive answers were involved.) The court could properly make an order that no evidence would be received on the issue involved in the question. Since no dangerous condition, other than that allegedly involving the markers and guidelines has been suggested, it was logical and proper for the trial court to dismiss the action, in the same manner as a dismissal would have been proper upon failure of proof of the allegation of the paragraph of the complaint which alleged the dangerous condition.[14]

There was no abuse of discretion in granting the motion to dismiss.

---

[14]Plaintiffs suggest "that the State at all times had in its possession photographs which clearly delineated the dangerous markings which had been placed on the roadway." It must be assumed that plaintiffs discovered the existence of these photographs at some time between the commencement of the action and their final answers which were filed four years later. Their failure to use or refer to them to answer the State's interrogatory permits the inference that they were evading a commitment on the issue,

The judgments are affirmed.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied March 26, 1968, and appellants' petition for a hearing by the Supreme Court was denied May 1, 1968.